**UNITED STATES**

**v.**

**Anthony B. CLAXTON, Aviation Electrician's Mate First Class, U.S. Coast Guard.**

**CGCM 0006.**

**Docket No. 902.**

U.S. Coast Guard Court of Military Review.

30 Sept. 1989.

Trial Counsel: L.Cdr. Michael J. Devine, USCG.

Detailed Defense Counsel: L.Cdr. Stefan G. Venckus, USCG.

Appellate Government Counsel: L.Cdr. Arthur R. Butler, USCG (On Brief), L.Cdr. Michael J. Devine, USCG.

Appellate Defense Counsel: L.Cdr. Robert Bruce, USCG (On Brief), L.Cdr. James Collin, USCG.

Before Panel Two, BAUM, BARRY and GRACE, Appellate Military Judges.

BAUM, Chief Judge:

Appellant, a first class petty officer with 16 years of good service, was convicted pursuant to his guilty pleas of one specification of destruction of military property, one specification of marijuana use, one specification of larceny and one specification of housebreaking in violation of Articles 108, 112a, 121 and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 908, 912a, 921, 930. The facts, as developed in the judge's plea providence inquiry, reveal that appellant went to a bar one evening to drink away his troubles after a particularly heated argument with his wife, who had threatened to leave him upon their 13 year old son's expulsion from school. When the bar closed, appellant, his brother-in-law, and a few others remained there drinking. Someone passed around a marijuana joint and, at the urging of the others, appellant took some puffs, which later formed the basis for the charged offense of marijuana use.

A few days after this event, appellant was required to participate in a random drug test ordered by his command. He provided the necessary urine samples, but afterwards, fearing the outcome, he became determined to do something to call the test into question before the results were reported. He decided that when he

next stood watch as Officer of the Day, he would use keys available to that duty officer to enter the dispensary where the test records and other urine samples were stored. Once inside the dispensary, he planned to use bolt cutters to remove the locks securing these items and take some kind of action to discredit the test. He carried through on this plan a week later when he was Officer of the Day. After taking some of the urine samples and records out of their place of storage and breaking the seals, he hid them in a hangar across the street. These acts resulted in the remaining charges of housebreaking, destruction of military property and larceny.

Within a day or two, the hidden samples and records were found, causing an investigation to commence. Appellant, feeling remorse and shame for his deeds, came forward on his own initiative and confessed before he was ever suspected. Thereafter, when charges were referred to trial he freely pled guilty without a pretrial agreement. The sentence adjudged by the court composed of officer members was approved without modification by the convening authority. That sentence consists of a bad conduct discharge, confinement for two and a half years and reduction to pay grade E-1.

## I—EVIDENCE CONCERNING REHABILITATIVE POTENTIAL

Appellant has assigned five errors before this Court relating essentially to the sentence and the sentencing process. Those errors are mooted by our action today which affirms the findings of guilty, but sets aside the sentence based on errors relating to the admission in evidence of uncharged misconduct and opinion testimony as to the accused's potential for rehabilitation. The Court of Military Appeals recently addressed the latter issue in U.S. v. Gunter, 29 MJ 140 (CMA September 25, 1989) and, in so doing, amplified the guidance provided earlier in U.S. v. Ohrt, 28 MJ 301 (CMA 1989). Our reading of those two cases is that, notwithstanding the apparent authority of RCM 1001(b)(5), the government may not call an accused's commanding officer at the sentencing stage of trial to testify that an accused lacks rehabilitative potential, unless it is in rebuttal to matters presented by the defense. Furthermore, such opinion testimony must always have a proper foundation based upon the accused's character and potential in order to be admissible. U.S. v. Ohrt, supra, makes it clear that testimony from a commanding officer that an accused does not have rehabilitative potential equates to expressing an opinion that the accused should be separated from the service with a punitive discharge, the only kind of discharge that a court-martial may impose. When such testimony is presented preemptively by the prosecution, it invades the proper province of the court to determine an appropriate punishment.

Here, the accused's Commanding Officer was called by the prosecution as part of the government's case in aggravation and was allowed to express his opinion concerning the accused's lack of rehabilitative potential. His testimony, therefore, violated the terms of Ohrt, supra, because it amounted to the commanding officer saying that the accused should be punitively discharged. Furthermore, this opinion lacked the necessary foundation for the same reason found in Ohrt, supra. It was based simply on the offenses committed rather than the accused's character and potential for further service, as reflected in the Commanding Officer's following testimony on direct examination by the trial counsel:

I do not believe Petty Officer Claxton is rehabilitative as a member of my command and the Coast Guard because, when I gave him trust and confidence as a First Class Petty Officer as Officer of the Day, he failed to maintain that trust and confidence which I place in people of that rank and position.

Record of Trial, Volume I at page 345.

Translated, that testimony reads as follows: any first class petty officer assigned as Officer of the Day, who, in that capacity, commits the offenses found by the Court, should be punitively discharged. When confronted with the same kind of

testimony in *Ohrt*, supra, the Court of Military Appeals reversed as to the sentence and returned the case for a rehearing. That action was taken because the Court was unable to determine whether this evidence unfairly influenced the court members. Here, in addition to the Commanding Officer's prohibited testimony, there were two instances of erroneously admitted uncharged misconduct. The cumulative effect of these three errors provides an even more compelling reason to take the same corrective action ordered in *Ohrt*, supra.

## II—UNCHARGED MISCONDUCT

■ The uncharged misconduct evidence in this case came out in cross-examination of the accused and, after that, in "rebuttal" testimony from a government witness. The first allusion to uncharged misconduct occurred when the judge allowed trial counsel, over defense objection and a motion for mistrial, to ask appellant on cross examination at the sentencing stage of trial whether appellant had said he was addicted to "speed at the time he was ordered into pretrial confinement". In answer to the trial counsel's question, appellant denied ever saying that. Subsequently, the judge reconsidered his ruling and determined the colloquy on this matter was inadmissible. While the judge's reason for reversing his earlier ruling is different from the uncharged misconduct basis which we see as paramount, it was nevertheless a correct decision. Trial counsel's question should never have been allowed and the judge properly revisited his earlier determination. The judge, in so ruling, did not grant the mistrial requested, instead, instructing the court members to disregard the questions and answers.

Appellant argues that the suggestion he was a habitual user of amphetamines is so totally contradictory to the evidence in extenuation and mitigation of a first class petty officer with 16 years of outstanding and unblemished military service that the members could not erase it from their minds at the judge's request. While we tend to agree, we believe, nonetheless, that, the judge's instruction *may* have been adequate to expunge any prejudicial effect on the sentence, if that particular offending testimony had been the only reference to inadmissible uncharged misconduct. It was not.

Additional uncharged misconduct was presented as government rebuttal to defense extenuation and mitigation testimony from the accused's wife that his pay had been terminated. Over defense objection, the judge allowed the convening authority's deputy to testify that appellant was arrested by civil authorities some three months after commission of the charged offenses, and that appellant was ordered into pretrial confinement as a result of that arrest. Furthermore, the Deputy Group Commander testified without clarifying instructions, that the accused had been retained on active duty beyond his enlistment for military justice purposes, but that his pay had been stopped on the date of his confinement by action of the Commandant.

The clear import of the Deputy Group Commander's testimony was that appellant had committed misconduct separate and apart from the charged offenses which was serious enough to warrant confinement. Moreover, this uncharged misconduct may have led the court members to believe that the severe action of terminating Coast Guard pay was related in some way to the appellant's acts. That was the very point trial counsel was trying to make and the reason given by him for offering the testimony in rebuttal, as clearly indicated in the following rationale provided by him for this testimony:

TC: I believe that [Mrs. Claxton's testimony regarding lack of pay] also opens the door in regards to explanation as to why the accused is not receiving pay and allowances and that is due to him being placed into pretrial confinement due to his own misconduct.

. . . . .

I believe it would be appropriate that it be before the members that this man was placed in pretrial confinement because of his own misconduct and that is why he is not receiving pay and allow-

ances, not because the Coast Guard has cut off his pay prior to trial.

Record of Trial, Volume II at 87.

In response, the defense counsel correctly argued that it was not necessary to get into the question of misconduct in order to explain the pay stoppage. All that was needed, according to him, was an explanation of Pay Manual provisions calling for termination of pay when confinement is coupled with expiration of enlistment. For this reason, he properly objected to testimony concerning the accused's civil arrest. The judge, however, rejected the defense position and allowed the testimony as to uncharged misconduct. In that respect, the judge erred. The testimony concerning appellant's civil arrest and subsequent confinement based on that arrest does not meet the test for an aggravating circumstance "directly relating to or resulting from the offenses of which the accused has been found guilty," as required by Rule for Courts–Martial 1001(b)(4), nor do we view the testimony as proper rebuttal to anything submitted by the defense.

As might be expected, this testimony prompted questions from court members asking why civil authorities were involved, whether the confinement was based on civil action or action by the Coast Guard, and the reason for appellant's confinement. In response to these questions, the judge elicited from the witness that the civilian arrest was not because of charges pending before the instant court but, instead, was a separate action. One of the members said he did not think the last part of his question had been answered. The question was: "*Who* had him confined & for what reason?" (Appellate Exhibit XXV) The judge responded, "As to the last part or the last question, CDR, thats getting into matters that are really not appropriate to this court." (Record of Trial Vol. II page 116) No further explanation or limiting instruction was given with respect to this matter.

These questions simply underscore the confusion and prejudicial effect created by this testimony. The judge's failure to provide further explanation and limiting instructions further exacerbated that prejudice.

These facts are in stark contrast to those present in this Court's recently decided case of *United States v. Lynott*, 28 M.J. 918 (CGCMR 1989). There, uncharged misconduct directly relating to and resulting from the charged offenses was properly developed in aggravation and presented to the military judge for consideration in his assessment of an appropriate sentence. The probative value in that instance outweighed any possible unfair prejudice and the resultant punishment imposed by the judge was far short of the maximum authorized and well within the terms of a pretrial agreement. Here, the uncharged misconduct was not a proper matter in aggravation under Rule for Courts–Martial 1001(b)(4) nor, in our view, was it admissible for sentencing under any other theory. Furthermore, even without these reasons for preventing this testimony, a balancing under Military Rule of Evidence 403 should have resulted in its exclusion because the unfair prejudicial effect far exceeded any probative value, as brought home by the court member's questions. In reaching our conclusions concerning uncharged misconduct, we have once again applied to the evidence the test laid out by Judge Cox in *United States v. Martin*, 20 M.J. 227, 230 footnote 5 (CMA 1985), as further amplified in *United States v. Wingart*, 27 MJ 128 (CMA 1988). See *United States v. Lynott, supra*, at 921. As indicated earlier, the cumulative effect of these errors together with the improper opinion testimony of the Commanding Officer compel a sentence rehearing rather than a sentence reassessment by this Court.

The findings of guilty are deemed correct in law and fact and are affirmed. The sentence is set aside and a rehearing on sentence is ordered.[1] If a rehearing is

---

1. As a separate matter, we are concerned by possible issues inherent in the accused's "no-pay" status which have not been raised before this Court. For example, does confinement without pay before conviction of any offense amount to unlawful punishment before trial, in violation of Article 13, Uniform Code of Military Justice, 10 U.S.C. § 813? If deemed punishment, may it possibly be characterized as "cruel and unusual" punishment, under the circum-

deemed impracticable, the convening authority may issue an order promulgating the affirmed findings with a sentence of no punishment imposed. Finally, appropriate authority shall expeditiously appoint a trial defense counsel to represent the accused in order to avoid the kind of problems encountered in *Hollywood v. Yost*, 20 M.J. 785 (CGCMR 1985), where a sentence rehearing was ordered, but counsel was not appointed to represent the accused until ordered by this Court in response to a petition for extraordinary relief. Upon completion of action by the convening authority, whether it includes a rehearing or otherwise, the record shall be returned to this Court for review and final action pursuant to the requirements of *Boudreaux v. U.S. Navy–Marine Corps Court of Military Review*, 28 MJ 181 (CMA 1989). All rights, privileges and property of which the accused has been deprived by virtue of the sentence we have set aside will be restored pending further action in this case.

Judges BARRY and GRACE concur.

stances of this case, considering the disintegrating impact it has had on the accused's family, in contravention of Article 55, Uniform Code of Military Justice, 10 U.S.C. § 855? Moreover, does involuntary retention on active duty without pay, somehow, divest a court of personal jurisdiction over an accused? These matters, not having been raised by counsel, while of concern, need not be addressed in arriving at an appropriate result *since our action returning the record for a rehearing on the sentence affords full opportunity for development of these matters*. The lawfulness of pretrial confinement without pay may be litigated at the trial level if *deemed appropriate by appellant as bearing on* sentence. Moreover, if the court lacked jurisdiction based on these facts, that, too, can be litigated at the sentence rehearing since jurisdictional issues can always be raised at any stage of the proceedings. Finally, *aside from Articles* 13 and 55, Uniform Code of Military Justice, the basic question whether it was a legally correct decision to terminate this accused's pay, upon the imposition of pretrial restraint *at a time when the accused may have been on a lawfully* extended enlistment, can also be addressed at any rehearing. In so doing, the difference between the facts of this case and those in which an accused's enlistment expires while serving adjudged confinement can be fully considered.