UNITED STATES, Appellant,

v.

**Anthony B. CLAXTON, Aviation Electrician Mate First Class, U.S. Coast Guard, Appellee.**

No. 64,223.
CG Dkt. No. 902.

U.S. Court of Military Appeals.

Argued Nov. 29, 1990.

Decided March 27, 1991.

For the Accused: *Lieutenant G. Arthur Robbins* (argued); *Lieutenant Commander James Collin.*

For the United States: *Lieutenant Commander Michael J. Devine* (argued).

### Opinion

COX, Judge:

On April 8, 1987, the accused pleaded guilty without benefit of a pretrial agreement to one specification each of destruction of military property, use of marijuana, larceny, and housebreaking, in violation of Articles 108, 112a, 121, and 130, Uniform Code of Military Justice, 10 USC §§ 908, 912a, 921, and 930, respectively. A general court-martial consisting of officer members, sitting at Coast Guard Group, Corpus Christi, Texas, sentenced the accused to a bad-conduct discharge, confinement for 2½ years, and reduction to E–1. The convening authority approved the sentence.

On September 30, 1989, the Court of Military Review approved the findings but set aside the sentence and authorized a rehearing on sentence. 29 MJ 667. On January 31, 1990, after the Government petitioned for reconsideration, the Court reaffirmed its previous decision. 29 MJ 1032. In March 1990, the Judge Advocate General of the Coast Guard * certified these issues for review (*see* Art. 67(a)(2), UCMJ, 10 USC § 867(a)(2) (1989)):

### I

WHETHER THE COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW BY HOLDING THAT A COMMANDING OFFICER'S TESTIMONY ON THE REHABILITATIVE POTENTIAL OF THE ACCUSED IS LIMITED TO REBUTTAL EVIDENCE ONLY BY THE DECISION OF *UNITED STATES v. OHRT,* 28 M.J. 301 (CMA 1989).

### II

WHETHER THE COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW BY FAILING TO APPLY MIL.R.EVID. 103(a) WHERE THE DEFENSE DID NOT OBJECT AT TRIAL, DID NOT RAISE THE ISSUE ON APPEAL AND THE COAST GUARD COURT OF MILITARY REVIEW DID NOT MAKE A FINDING OF PLAIN ERROR.

### III

WHETHER THE COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW BY HOLDING THAT THE MILITARY JUDGE ERRED IN HIS RULING THAT THE DEFENSE HAD "OPENED THE DOOR" AND THEREFORE, PERMITTED THE TRIAL COUNSEL TO CROSS–EXAMINE THE ACCUSED ON HIS STATEMENT REGARDING THE USE OF AMPHETAMINES, BECAUSE THE COURT OF

---

* The General Counsel of the Department of Transportation serves as the Judge Advocate General of the Coast Guard except in time of war. Art. 1(1), Uniform Code of Military Justice, 10 USC § 801(1).

MILITARY REVIEW HELD THAT IT CONSTITUTED UNCHARGED MISCONDUCT.

## IV

WHETHER THE COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW IN DETERMINING THAT THE MILITARY JUDGE ERRED IN ADMITTING EVIDENCE OF SUBSEQUENT MISCONDUCT OF THE ACCUSED AFTER HE RULED THAT THE DEFENSE HAD CREATED A FALSE IMPRESSION REGARDING HIS PRETRIAL CONFINEMENT, THEREBY PERMITTING REBUTTAL EVIDENCE IN ACCORDANCE WITH *UNITED STATES v. STRONG*, 17 M.J. 263 (CMA 1984).

## V

WHETHER THE COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW BY *SUA SPONTE* CONJECTURING ON THE JURISDICTIONAL SIGNIFICANCE OF PRETRIAL CONFINEMENT IN THIS CASE, WHICH WAS NOT CHALLENGED AT TRIAL OR ON APPEAL, AND BY INVITING LITIGATION OF SAID THEORY AT A REHEARING ON SENTENCING.

The gist of the accused's misconduct was allegedly initiated by his use of marijuana. A few days after this alleged use, the accused and his unit were subjected to a mandatory urinalysis. Mil.R.Evid. 313(b), Manual for Courts–Martial, United States, 1984. Fearing detection, the accused abused his position as Officer of the Day by breaking into the facility where the samples were being stored. He removed to a hiding place a quantity of samples; and he tampered with some of them, including his own. Shortly thereafter, the evidence was inadvertently discovered by another servicemember. The investigation that ensued led to the accused's confession of the foregoing.

## *Lack of Rehabilitative Potential Testimony*

During the sentencing hearing, the accused's commander, a Captain in the Coast Guard, was called as a prosecution witness. He testified that he had known the accused for "[a]pproximately two and a half years." Asked about his observation of the accused's duty performance, the Captain testified merely that he had "seen him on the hangar deck and also signed off on his performance ratings."

Regarding the accused's "rehabilitative potential" (*see* RCM 1001(b)(5), Manual, *supra* ), the Captain opined, *without defense objection:*

> I do not believe Petty Officer Claxton is rehabilitative as a member of my command and the Coast Guard *because, when I gave him trust and confidence as a First Class Petty Officer as Officer of the Day, he failed to maintain that trust and confidence which I place in people of that rank and position.*

(Emphasis added.)

The Court of Military Review, in its opinion of September 30, 1989, translated that language into the following:

> [A]ny first class petty officer assigned as Officer of the Day, who, in that capacity, commits the offenses found by the Court, should be punitively discharged.

29 MJ at 668. As such, the court concluded that the testimony was improper in form and contrary to our holdings in *United States v. Gunter*, 29 MJ 140 (CMA 1989), and *United States v. Ohrt*, 28 MJ 301 (CMA 1989). *See also United States v. Corraine*, 31 MJ 102 (CMA 1990); *United States v. Aurich*, 31 MJ 95 (CMA 1990); *United States v. Wilson*, 31 MJ 91 (CMA 1990); *United States v. Horner*, 22 MJ 294 (CMA 1986). With that conclusion, we agree.

As early as *Horner*, we held that testimony concerning rehabilitative potential is to be an "assessment of ... [an accused's] character and potential, ... [not] the commander's view of the severity of the offense." 22 MJ at 296. We assume in the instant case that the witness had sufficient

contact with the accused to enable him to formulate an opinion regarding the accused's rehabilitative potential. The problem is that the only basis given in the record for his opinion violates the rule announced in *Horner*.

■ We disagree, however, with the Court of Military Review that the Government can only introduce rehabilitative-potential evidence in rebuttal. 29 MJ at 668. We are not aware of having made such an assertion; if we have, we hereby disown it. Nonetheless, as our cases demonstrate, *supra*, the scope of such preemptive testimony is quite limited, and those limits were exceeded in this case.

### Waiver

■ As indicated, the defense did not object to the Captain's testimony that the accused lacked rehabilitative potential due to the nature of his offense. Such lack of objection can amount to waiver. Mil.R. Evid 103(a)(1). However, the Court of Military Review (29 MJ at 1033) chose not to apply the waiver doctrine, relying on its plenary review authority granted by Article 66(c), UCMJ, 10 USC § 866(c):

> It [the court] may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.

■ A clearer *carte blanche* to do justice would be difficult to express. *See United States v. Evans*, 28 MJ 74 (CMA 1989); *United States v. Britton*, 26 MJ 24 (CMA 1988). Our own review authority, for example, is much more limited. Art. 67(c), UCMJ, 10 USC § 867(c) (1989). Even though we agree with the Government that the defense was on notice through RCM 1001(b)(5) and *United States v. Horner*, *supra*, of the permissible scope of rehabilitative-potential testimony, that does not require the Court of Military Review to apply waiver. No "plain error" threshold is involved. If the Court of Military Review, in the interest of justice, determines that a certain finding or sentence should not be approved—by reason of the receipt of improper testimony or otherwise—the court need not approve such finding or sentence. Of course, in the converse situation, where plain error is present, the Court of Military Review may not rely on waiver. *See United States v. Fisher*, 21 MJ 327 (CMA 1986).

### Evidence of Uncharged Use of "Speed"

■ After the prosecution presented its sentencing case-in-chief, the defense presented its evidence. During the defense case, the accused testified under oath. He briefly described his confessed marijuana usage; his concerns about its impending discovery through urinalysis and the impact on his theretofore unblemished 16-year military career; as well as the actions he took in desperation to preserve his livelihood.

The Government took the view that the accused was suggesting to the court-martial that this had been an isolated episode of drug usage, and the Government believed this to be false. In particular, the Government had a witness who would testify that the accused admitted (at the time his pretrial confinement commenced) to being addicted to "speed." On cross-examination of the accused, the Government sought to ask the accused whether he had made such an admission. The defense objected, but the military judge agreed with the Government's view of the tenor of the accused's testimony. The question was permitted; the accused denied having made such a statement.

At an Article 39(a), UCMJ, 10 USC § 839(a), examination of this government witness, the military judge concluded that any such statement was obtained in violation of Article 31(b), UCMJ, 10 USC § 831(b). Accordingly, the witness was not permitted to testify; the judge ruled that the "speed"-addiction question should never have been asked; and the judge instructed the court members to disregard the entire subject.

The Court of Military Review agreed with the military judge's reversal of his

initial decision to permit the questioning. That court, however, regarded the "uncharged misconduct" issue as "paramount." 29 MJ at 669. The court did not elaborate on its conclusions. *See also* 29 MJ at 1033. Presumably, it viewed the accused's testimony as not having "opened the door" to such "rebuttal."

The court's lack of definitiveness on the issue is apparently explained by the relative unimportance it accorded the issue, for Chief Judge Baum stated:

> [The accused] argues that the suggestion he was a habitual user of amphetamines is so totally contradictory to the evidence in extenuation and mitigation of a first class petty officer with 16 years of outstanding and unblemished military service that the members could not erase it from their minds at the judge's request. While we tend to agree, we believe, nonetheless, that the judge's instruction *may* have been adequate to expunge any prejudicial effect on the sentence, if that particular offending testimony had been the only reference to inadmissible uncharged misconduct. It was not.

29 MJ at 669; *see also* 29 MJ at 1033.

The Government asks us to decide whether the Court of Military Review erred in concluding that the accused had not "opened the door" and to hold that the Government's cross-examination sought proper rebuttal evidence. Assuming that to be the basis of the Court of Military Review's holding, the entire question hinges on whether the accused's direct testimony implied that his confessed marijuana use was an isolated incident. The military judge obviously believed that it contained such implication; the Court of Military Review presumably believed that it did not.

■ We resolve the issue much as we did the preceding one. We are charged with resolving questions of law, Art. 67(c), but we are confronted with two diametrically opposed interpretations of the same testimony. Such interpretations are primarily for factfinders. As a matter of law, a reasonable factfinder could fairly derive either implication from the accused's testimony. As a matter of law, therefore, the Court of Military Review—a factfinder—was not wrong in concluding that the accused did not open the door and, therefore, that the rebuttal was improper. In this respect, the Court of Military Review's interpretation governs.

### *Evidence of Uncharged Subsequent Misconduct*

■ During the defense case on sentencing, the accused's wife testified. On direct examination by defense counsel, she was asked this question and gave this response:

> Q How has this—how has your husband's court-martial affected you?
>
> A It's devastated me. I have no family *and they terminated my husband's pay*. I couldn't—I had no income. I couldn't afford to stay in Corpus Christi. I'm living with my sister in a small house. She's not financially secure, so, I've had to take my son, who is a patient at Bayview Psychiatric Hospital, out of the hospital. He's now living with relatives in Georgia when he should be in the hospital and I just, you know, have nothing left.

(Emphasis added.)

This response generated a question from a court member as to why the accused's pay was stopped, and the military judge explained:

> [B]asically, the Coast Guard Pay Regulations provide that, when a member is put into confinement, in this case, pretrial confinement, after his enlistment has expired, he does not receive pay and allowances.

The Government, nonetheless, took the view that this state of evidence permitted it to introduce evidence that the accused had subsequently been arrested by civil authorities and ordered into pretrial confinement as a result. The military judge agreed that the defense had perpetrated

> an erroneous impression as to why the accused is in pretrial confinement and I

think that erroneous impression must be clarified.

Accordingly, the judge permitted the Government to call a witness who testified about the accused's subsequent arrest and confinement.

The Court of Military Review was clearly astounded by these extrapolations, 29 MJ at 669–70, as are we. As with the previous issue, we are confronted by two diametrically opposed constructions of the same testimony. This time, however, one view cannot rationally be derived from the testimony. Our attention has been called to no instance in which Mrs. Claxton or any other defense witness or agent made *any* intimation as to *why* the accused was in pretrial confinement or *why* his pay was terminated. If any further explanation was required, sanitized instructions from the military judge should have more than sufficed. As the Government offers no plausible theory why admission of this arrest/confinement evidence was relevant to an issue before the court-martial, its receipt in evidence was error as a matter of law.

### Conjecture and Invitation

■ In both of its opinions in this case, the Court of Military Review raised, in footnote, questions about the propriety of pretrial confinement of a servicmember in a "no-pay" status. 29 MJ at 670 n. 1; 29 MJ at 1035 n. 2. These footnotes have prompted the Judge Advocate General to question whether the Court of Military Review "erred as a matter of law by *sua sponte* conjecturing on the jurisdictional significance of pretrial confinement . . . and by inviting litigation of said theory at a rehearing on sentencing." We can only respond that no court can err by merely "conjecturing" or "inviting" anything. If the conjecturing/inviting leads some court or official to "decide," "hold," "rule," "order," etc., errors can occur and appeals taken. That will be the proper time to address the issues as then framed.

The decision of the United States Coast Guard Court of Military Review ordering a rehearing on sentence is affirmed.

EVERETT, Senior Judge (concurring in the result):

The Coast Guard Court of Military Review concluded from its reading of *United States v. Ohrt*, 28 MJ 301 (CMA 1989), and *United States v. Gunter*, 29 MJ 140 (CMA 1989), that, "notwithstanding the apparent authority of RCM 1001(b)(5)," Manual for Courts–Martial, United States, 1984, "the government may not call an accused's commanding officer at the sentencing stage of trial to testify that an accused lacks rehabilitative potential, unless it is in rebuttal to matters presented by the defense." 29 MJ 667, 668 (1989). Although I find no assertion to this effect in either *Ohrt* or *Gunter*, I believe the court below reached a correct conclusion.

The language of RCM 1001(b)(5)—which was promulgated by the President in the exercise of his powers under Article 36 of the Uniform Code of Military Justice, 10 USC § 836—gives the Government the right to offer "evidence, in the form of opinions concerning the accused's previous performance as a servicemember and potential for rehabilitation." The location of this provision would seem to indicate that the offering of such evidence was not limited to purposes of rebuttal—which is treated separately in RCM 1001(d).

Although the Drafters' Analysis of RCM 1001(b)(5) is meager, Manual, *supra* at A21–64 (Change 3), it is clear that reference of the rule to "potential for rehabilitation" should be translated to read "lack of potential for rehabilitation." No one can imagine a prosecutor presenting testimony that the accused *has* an excellent potential for rehabilitation.

The difficulty that I have with testimony like that offered by the Government in this case is that it appears to me that, usually, potential for rehabilitation is not in issue until and unless the defense raises it during the sentencing proceedings. Conceivably, evidence offered on the merits might in some way suggest that an accused could be readily rehabilitated; such a situation, however, would be quite extraordinary. As we

put it in *United States v. Aurich*, 31 MJ 95, 96 n.* (CMA 1990), "[W]e believe it to be the rare case where it is necessary for the Government to introduce such opinions unless the accused places such potential in issue."

Thus, I conclude that, on grounds of relevance and notwithstanding the relative location of RCM 1001(b)(5) mentioned earlier, testimony—whether from the commanding officer or anyone else—as to an accused's lack of potential for rehabilitation should be excluded until rebuttal.* Obviously, under my view, it is unnecessary to reach the concerns expressed by this Court in *Ohrt* and by the court below in this case concerning the meaning that a sentencing authority would give to testimony from a commanding officer that an accused does not have rehabilitative potential.

With respect to the other issues decided by this Court, I agree fully with the lead opinion. As to the concerns expressed by the Court of Military Review about Claxton's "no pay" status, *see* 29 MJ at 670 n.1, I am convinced that this status had no effect on the jurisdiction of the court-martial. However, termination or withholding of the accused's pay does raise some issues that can properly be litigated at the sentence rehearing or in the United States Claims Court. *See Keys v. Cole*, 31 MJ 228, 234 (CMA 1990).

SULLIVAN, Chief Judge (concurring in part and in the result): I agree with my Brothers' resolution of the uncharged-misconduct issue, but I disagree with their resolution of the waiver issue. *See United States v. Evans*, 28 MJ 74, 76 (CMA 1989) (Sullivan, J., dissenting); *United States v. Britton*, 26 MJ 24, 27 (CMA 1988) (Sullivan, J., dissenting). Their expansive interpretation of Article 66(c), Uniform Code of Military Justice, 10 USC § 866(c), has created a court of equity, not law. Admittedly, a service appellate court has extraordinary factfinding powers and unique sentence-assessment power. *See generally* H. Moyer, *Justice and the Military* §§ 2–780, 2–782, and 2–785 (1972). However, in the present case, it set aside the sentence on legal grounds. *See United States v. Horner*, 22 MJ 294 (CMA 1986). When it purports to decide questions of law, it should be bound by rules of law like any other court. *See United States v. Wilson*, 31 MJ 91 (CMA 1990); *cf. United States v. Corraine*, 31 MJ 102 (CMA 1990). *See generally United States v. Vangelisti*, 30 MJ 234 (CMA 1990).

---

* The only exception would be if the military judge allowed the Government to present such evidence initially as a matter of convenience for witnesses after ascertaining that the defense would be claiming that the accused has rehabilitation potential.