# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

———————————

No. ACM 40206

———————————

**UNITED STATES**
*Appellee*

**v.**

**Justin M. BRISSA**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 27 February 2023

———————————

*Military Judge:* Brett A. Landry.

*Sentence:* Sentence adjudged on 15 July 2021 by GCM convened at Malmstrom Air Force Base, Montana. Sentence entered by military judge on 19 August 2021: Bad-conduct discharge, confinement for 5 months, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

*For Appellant:* Major Eshawn R. Rawlley, USAF.

*For Appellee:* Lieutenant Colonel Thomas J. Alford, USAF; Major John P. Patera, USAF; Major Jasmine J. Prokscha, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEY, and GRUEN, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge KEY and Judge GRUEN joined. Senior Judge KEY filed a separate concurring opinion.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

JOHNSON, Chief Judge:

The military judge found Appellant guilty, in accordance with his pleas, of one specification of wrongful distribution of lysergic acid diethylamide (LSD), one specification of wrongful use of LSD on divers occasions, and one specification of wrongful use of marijuana on divers occasions, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a. The military judge sentenced Appellant to a bad-conduct discharge, confinement for a total of five months, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority issued the reprimand but otherwise took no action on the findings or sentence.

Appellant raises a single issue for our consideration on appeal: whether the assistant trial counsel committed prosecutorial misconduct by falsely representing to the court-martial that he was qualified, and thereby created an intolerable strain on the public's perception of the military justice system. We find Appellant suffered no material prejudice to his substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant's general court-martial took place from 13 to 15 July 2021. The Government was represented by a senior trial counsel, Major (Maj) JP,[1] and an assistant trial counsel, Captain (Capt) CP. Shortly after Appellant's court-martial commenced, Capt CP stated for the record that Maj JP was qualified and certified under Article 27(b), UCMJ, 10 U.S.C. § 827(b), and sworn under Article 42(a), UCMJ, 10 U.S.C. § 842(a). Capt CP then announced that he was qualified but not yet certified under Article 27(b), UCMJ, and was not sworn under Article 42(a), UCMJ. Capt CP further declared, "No member of the [P]rosecution has acted in any manner that might tend to disqualify us in this court-martial." The military judge then administered an oath to Capt CP pursuant to Article 42(a), UCMJ, whereby he swore to perform his duties as assistant trial counsel faithfully.

The military judge accepted Appellant's pleas of guilty to three specifications of violation of Article 112a, UCMJ, as described above. Appellant pleaded not guilty to a fourth specification of violating Article 112a, UCMJ, and elected to be tried by a panel of officer members. Capt CP delivered the opening statement for the Government, and Maj JP delivered the closing argument. The members found Appellant not guilty of the litigated specification. After the members entered their findings, Appellant elected to be sentenced by the military judge. Capt CP delivered the Government's sentencing argument, during

---

[1] Maj JP was a captain at the time of Appellant's court-martial.

which he recommended the military judge impose a bad-conduct discharge, confinement for 12 months, reduction to the grade of E-1, and forfeiture of all pay and allowances.

Following the court-martial, Appellant did not submit any matters for the convening authority's consideration pursuant to Rule for Courts-Martial (R.C.M.) 1106, or any other request for relief.[2] After consulting with his staff judge advocate, the convening authority provided the language of the adjudged reprimand but otherwise took no action to modify the findings or sentence. The military judge entered the judgment of the court-martial on 19 August 2021. Nothing in the record of trial as of entry of judgment calls into question Capt CP's qualifications to serve as assistant trial counsel.

On appeal before this court, the parties have moved to attach several documents to the record, which we have granted. These documents tend to establish the following circumstances.

Capt CP obtained a juris doctor degree in 2019 and The Judge Advocate General (TJAG) designated him a judge advocate effective 13 January 2020. Capt CP's license to practice law was suspended by his state supreme court's board of professional responsibility in March 2021, four months before Appellant's court-martial, because of his failure to pay bar dues.

Capt EB, one of Appellant's trial defense counsel, learned of Capt CP's license suspension from other defense counsel in early March 2022.[3] Capt EB notified Appellant's appellate defense counsel of the suspension on 17 March 2022. Maj JP, the senior trial counsel, learned of the suspension from Capt CP's deputy staff judge advocate on 18 March 2022, and she informed Capt EB of the suspension the following day, 19 March 2022. At the time of Appellant's court-martial, neither Maj JP nor Capt EB were aware Capt CP's license was suspended.

## II. DISCUSSION

### A. Law

We review prosecutorial misconduct de novo. *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citing *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018)). "Prosecutorial misconduct occurs when trial counsel

---

[2] The record does not contain a written waiver of the R.C.M. 1106 submission. However, the convening authority's Decision on Action memorandum states Appellant did not submit such matters, and Appellant has not alleged any related error either pursuant to R.C.M. 1103 or on appeal.

[3] Appellant's other trial defense counsel had separated from the Air Force by that point.

'overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014) (alteration in original) (quoting *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005)). Such conduct "can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, [for example] a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *Andrews*, 77 M.J. at 402 (quoting *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996)). "[T]he prosecutorial misconduct inquiry is an objective one, requiring no showing of malicious intent on behalf of the prosecutor." *Hornback*, 73 M.J. at 160.

"[A]ssistant trial counsel detailed for a general court-martial must be determined to be competent to perform such duties by the Judge Advocate General, under such rules as the President may prescribe." Article 27(c)(2), UCMJ, 10 U.S.C. § 827(c)(2).

"Before performing their respective duties . . . assistant trial counsel . . . shall take an oath to perform their duties faithfully. The form of the oath, the time and place of the taking thereof, the manner of recording the same . . . shall be as prescribed in regulations of the Secretary concerned." Article 42(a), UCMJ.

R.C.M. 502(d)(1)(B) provides, in part:

> Any commissioned officer may be detailed . . . as assistant trial counsel in general or special courts-martial if that person—
>
> (i) is determined to be competent to perform such duties by the Judge Advocate General; and
>
> (ii) takes an oath in accordance with Article 42(a), [UCMJ,] certifies to the court that the person has read and is familiar with the applicable rules of procedure, evidence, and professional responsibility, and meets any additional qualifications the Secretary concerned may establish.

"Any person detailed as assistant trial counsel must be designated as a judge advocate in accordance with [Air Force Instruction] 51-101 . . . ." Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, ¶ 10.3.2.1 (18 Jan. 2019).

"Only TJAG is authorized to designate [Regular Air Force] . . . officers as judge advocates and remove that designation." AFI 51-101, *The Air Force Judge Advocate General's Corps (AFJAGC) Operations, Accessions, and Professional Development*, ¶ 6.2.1 (29 Nov. 2018).

> To be designated as a judge advocate, officers must . . . [b]e a graduate of a law school that was accredited or provisionally

accredited by the American Bar Association at the time of graduation; and . . . [b]e in active (or equivalent) status, in good standing, and admitted to practice before the highest court of a United States (US) state, commonwealth or territory, or the District of Columbia.

*Id.* at ¶¶ 6.2.2, 6.2.2.1, 6.2.2.2. "Once designated, a judge advocate must maintain current eligibility to actively practice law before the highest court of the jurisdiction where they are licensed." *Id.* at ¶ 6.3.1.

A judge advocate's designation or certifications or both may be withdrawn for good cause, including *inter alia* "fail[ure] to maintain professional licensing standards." *Id.* at ¶¶ 7.3, 7.3.1. A staff judge advocate or other AFJAGC supervisor "submit[s] recommendations to withdraw a judge advocate's designation, certification, or both through judge advocate supervisory channels to AF/JA." *Id.* at ¶ 7.5.

When TJAG receives a recommendation or has sufficient basis to consider withdrawal, the judge advocate is notified of the proposed action and is afforded an opportunity to present information to show cause why the action should not be taken. The judge advocate will be given at least three duty days to respond. TJAG makes the final decision on withdrawal of designation or certification.

*Id.* "An officer whose designation has been withdrawn is not authorized to perform the duties of a judge advocate . . . unless authorized by TJAG." *Id.* at ¶ 7.6.

"A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a). "In assessing prejudice, we look at the cumulative impact of any prosecutorial misconduct on the accused's substantial rights and the fairness and integrity of his trial.'" *Fletcher*, 62 M.J. at 184 (citation omitted).

**B. Analysis**

Appellant asks this court to set aside his bad-conduct discharge because, he contends, Capt CP's participation in his court-martial as assistant trial counsel "intolerably strained" the "public's faith in the military justice system." Because the factual foundation for Appellant's argument relies on material outside the record of Appellant's court-martial, we must initially determine whether we may consider such material in light of *United States v. Jessie*, 79 M.J. 437 (C.A.A.F. 2020).

### 1. Application of *United States v. Jessie*

In *Jessie*, the United States Court of Appeals for the Armed Forces (CAAF) explained that, in general, the Courts of Criminal Appeals (CCAs) "may not consider anything outside of the 'entire record' when reviewing a sentence under Article 66(c), UCMJ[, 10 U.S.C. § 866(c)]."[4] *Id.* at 441 (citation omitted). The CAAF defined the "entire record" to include the "record of trial," "matters attached to the record" pursuant to the Rules for Courts-Martial (formerly known as "allied papers"), and "briefs and arguments that government and defense counsel (and the appellant personally) might present regarding matters in the record of trial and 'allied papers.'" *Id.* at 440–41 (citations omitted). However, the CAAF identified two exceptions to this general rule. First, the CAAF acknowledged certain precedents had "allowed the CCAs to supplement the record . . . when necessary for resolving claims of ineffective assistance of trial defense counsel and a wide variety of other issues when those claims and issues are raised by the record but are not fully resolvable by the materials in the record." *Id.* at 442 (citations omitted). Second, other CAAF precedents have "allowed appellants to raise and present evidence of claims of cruel and unusual punishment and violations of Article 55, UCMJ[, 10 U.S.C. § 855, or the Eighth Amendment[5]] even though there was nothing in the record regarding those claims." *Id.* at 444 (citations omitted).

Appellant's assignment of error implicates *Jessie* because nothing in the "entire record"—that is, the record of trial and matters attached for appellate review pursuant to R.C.M. 1112(b) and R.C.M. 1112(f), respectively—indicates Capt CP's license to practice law was suspended at the time of Appellant's court-martial. We granted the parties' motions to attach certain documents as described above, and we note neither party objected to the other's motion to attach.[6] However, whether we may consider these materials consistent with the statutory limitations on our authority the CAAF identified in *Jessie* in deciding the issue Appellant has raised is a distinct question.

---

[4] *Jessie* addressed the version of Article 66(c), UCMJ, in effect prior to 1 January 2019. The equivalent provision is located at Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1), in the current version of the statute. *See Manual for Courts-Martial, United States* (2019 ed.), App. 2, at A2-27.

[5] U.S. CONST. amend. VIII.

[6] After citing *Jessie*, the Government's motion to attach stated: "If this [c]ourt finds that the question of [Capt CP's] qualification to participate in the court-martial was directly raised by materials in the record, the attached documents are relevant to address Appellant's claims of error and prejudice . . . ."

The answer to this question is not clear. The CAAF has yet to explain the application of *Jessie* in a situation such as this,[7] and it appears to be a question of first impression for our court. However, for the following reasons we will presume for purposes of our analysis that *Jessie* does not foreclose our consideration of the attached materials.

First, it is at least arguable that Capt CP's statement on the record that he was qualified and had not "acted in any manner that might tend to disqualify [him] in [Appellant's] court-martial" raised the issue of his qualifications, and therefore we may supplement the record in order to resolve the issue consistent with *Jessie's* first exception. The evident purpose of such a statement is to affirmatively assure the court-martial participants and spectators, and capture for the record, that counsel are qualified for their roles.

Second, for us to hold that CCAs are unable to consider evidence adduced after trial that critical participants, such as trial counsel, were in fact disqualified from their roles would seem to remove an important safeguard for the integrity of the military justice system. *Cf. United States v. Parker*, 36 M.J. 269, 271 (C.M.A. 1993) (noting the service appellate courts "are something like the proverbial 800-pound gorilla when it comes to their ability to protect an accused"); *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991) (explaining Article 66(c), UCMJ, conferred on the service appellate courts "*carte blanche* to do justice"). Accordingly, we are inclined to err on the side of ensuring the fairness of the proceedings.

---

[7] The specific situation the CAAF addressed in *Jessie* involved the appellant's attempts to supplement the record with information regarding the conditions of his post-trial confinement alleging violations of his First Amendment, U.S. CONST. amend. I, and Fifth Amendment, U.S. CONST. amend. V, rights. *Id.* at 439. Therefore, *Jessie* was factually unlike the issue in Appellant's case which relates to events before and during the court-martial. In the approximately three years since *Jessie* was decided, the CAAF has cited the decision in six other cases, including four times in majority opinions. *See United States v. King*, ___ M.J. ___, No. 22-0008, slip op. at 9–10 (C.A.A.F. 23 Feb. 2023); *United States v. Givens*, 82 M.J. 211, 221 n.3 (C.A.A.F. 2022) (Ohlson, C.J., dissenting); *United States v. Anderson*, 82 M.J. 82, 89 (C.A.A.F. 2022) (Maggs, J., concurring); *United States v. Johnson*, 81 M.J. 451, 452 (C.A.A.F. 2021) (mem.); *United States v. Willman*, 81 M.J. 355 *passim* (C.A.A.F. 2021) *cert. denied*, ___U.S.___, 142 S. Ct. 2811 (2022); *United States v. Stanton*, 80 M.J. 415, 417 n.2 (C.A.A.F. 2021). *Willman*, like *Jessie*, involved the appellant's attempt to supplement the record with respect to the conditions of his post-trial confinement; thus it provides little guidance on the application of *Jessie* in Appellant's case. 81 M.J. at 357. The recent decision in *King*, the only other CAAF opinion to address *Jessie* in any depth, found this court "did not abuse its discretion by attaching relevant materials that were outside the record to resolve [a] member selection issue" that was raised by the record. *King*, slip op. at 9–10.

Third, the Government has not invoked *Jessie* to argue we are prohibited from considering the additional material in this case. *Cf. United States v. Stanton*, 80 M.J. 415, 417 n.2 (C.A.A.F. 2021) (explaining the CAAF considered documents regarding the appellant's administrative discharge without deciding whether it was part of the entire record of the court-martial "because neither party has objected to [the CAAF's] consideration of them").

Fourth, our presumption that we may consider the additional material does not result in unfair prejudice to the Government because, as we explain below, Appellant cannot demonstrate he is entitled to relief.

### 2. Prosecutorial Misconduct

Appellant contends Capt CP was unqualified to serve as assistant trial counsel under Article 27(b), UCMJ, "because he failed to maintain current eligibility to practice law before the highest court" of a United States jurisdiction, and therefore "was not a judge advocate as defined by secretarial regulation." *See* AFI 51-101, ¶ 6.2.2.2. Appellant further asserts it is "reasonably inferable" that Capt CP was aware of the suspension, and therefore he "committed misconduct when he falsely represented to the court-martial that he was qualified to represent the United States as assistant trial counsel."

The Government responds that Capt CP was, so far as the record and attached material discloses, still a judge advocate at the time of Appellant's court-martial and therefore not disqualified from serving as assistant trial counsel. The Government notes that TJAG had designated Capt CP a judge advocate in January 2020, and TJAG had not withdrawn that designation. We agree with the Government on this point. The qualifications to serve as assistant trial counsel are that the individual: (1) is designated a judge advocate by TJAG; and (2) takes the oath in accordance with Article 42(a), UCMJ. *See* R.C.M. 502(d)(1)(B). Although Capt CP had apparently put his designation at risk by allowing his license to be suspended, TJAG had not withdrawn it; and the military judge administered the oath to Capt CP at the outset of Appellant's court-martial.

Nevertheless, this does not conclude our inquiry. Although Capt CP may have been qualified as an assistant trial counsel, he further asserted he had not "acted in any manner that might tend to disqualify [him] in this court-martial." This was evidently not true. By failing to maintain an unsuspended license to practice as of four months before the court-martial, Capt CP had acted in a manner that "might tend" to result in his disqualification. A judge advocate "shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . ." AFI 51-110, *Professional Responsibility Program*, Atch 2, Rules 3.3(a), 3.3(a)(1) (11 Dec. 2018); *see also* AFI 51-110,

Atch 7, Standard 3-2.8(a) ("It is unprofessional conduct for a trial counsel intentionally to misrepresent matters of fact or law to the court."). Therefore, in light of *Andrews*, 77 M.J. at 402, it would have been prosecutorial misconduct for Capt CP to have knowingly made a false statement to the court-martial or, having learned of its falsity, failed to correct the error.

The materials provided by the parties do not clearly establish whether Capt CP knew his license had been suspended as of the time of Appellant's court-martial. However, we note the suspension took effect approximately four months before the court-martial. We further presume Capt CP, as a member of his state bar, was on notice of the type of behavior that would result in his license being suspended. In addition, the record and materials before us give no indication Capt CP corrected his false statement as of 19 August 2021, when the military judge entered the judgment, over a month after Appellant was sentenced. Furthermore, the Government has provided no information that the suspension on Capt CP's license to practice was ever removed. These circumstances create a reasonable inference that Capt CP either knew his license was suspended or, having learned of the suspension, knowingly failed to correct his false statement while the military judge still had authority over Appellant's court-martial. *See* R.C.M. 1104 (providing procedures for post-trial hearings and motions with the military judge). Accordingly, we will assume for purposes of our analysis that Appellant has demonstrated prosecutorial misconduct on Capt CP's part.

However, Appellant cannot demonstrate material prejudice to his substantial rights. Although Capt CP's license was suspended, the Government was also represented by Maj JP, a senior trial counsel who was properly detailed, certified, and sworn. Apart from Capt CP's asserted disqualification, Appellant does not allege any other misconduct or material error by the Prosecution. Appellant pleaded guilty to the offenses for which he was sentenced. He does not contend his pleas were improvident or his convictions otherwise invalid, nor does he contend his sentence is inappropriate. He does not allege any error by the military judge, nor any deficient performance by his trial defense counsel. Appellant was "entitled to a fair trial but not a perfect one." *Lutwak v. United States*, 344 U.S. 604, 619 (1953). Appellant's court-martial may not have been perfect, but he has failed to demonstrate it was unfair.

Although Appellant concedes that "courts typically assess a prosecutor's misconduct through the lens of specific prejudice," he urges us to apply "the lens of general prejudice." He cites the "particular importance" of trial counsel's qualifications to military justice and asserts Capt CP's conduct created an "intolerable strain" on the public perception of the military justice system—particularly in light of Capt CP's delivery of the Government's sentencing argument. We are not persuaded. CAAF precedent holds that prosecutorial

misconduct is to be tested for its impact "on the accused's substantial rights and the fairness and integrity of his trial." *Fletcher*, 62 M.J. at 184. Military appellate courts have applied the Article 59(a), UCMJ, material prejudice standard even in cases where trial counsel was actually ineligible to participate in the court-martial. *See, e.g.*, *Wright v. United States*, 2 M.J. 9, 10–11 (C.M.A. 1976) (noting Government conceded trial counsel had fraudulently obtained certification and was not qualified, but testing for prejudice and finding none); *United States v. Bressler*, No. ACM 38660, 2016 CCA LEXIS 746, at *10–11 (A.F Ct. Crim. App. 16 Dec. 2016) (unpub. op.) (finding no prejudice to appellant where trial counsel was also accuser); *United States v. Roach*, No. ACM S31143 (rem), 2011 CCA LEXIS 94, at *5–7 (A.F. Ct. Crim. App. 19 May 2011) (unpub. op.) (testing trial counsel's failure to take oath required by Article 42(a), UCMJ, for material prejudice). Accordingly, we find Appellant has not demonstrated he is entitled to relief.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

KEY, Senior Judge (concurring):

I concur with the opinion of the court insofar as it concludes Appellant has not demonstrated he is entitled to any relief. I write separately to express my opinion that the restrictions in *United States v. Jessie*, 79 M.J. 437 (C.A.A.F. 2020), are inapplicable when we are considering matters related to the conduct of a court-martial, regardless of whether those matters were litigated at the court-martial. My esteemed colleagues in the majority presume the *Jessie* restrictions do not apply in this case; I, however, conclude the matters raised here fall entirely outside the scope of *Jessie*'s restrictions.

In *Jessie*, the United States Court of Appeals for the Armed Forces (CAAF) rooted its analysis in what was then Article 66(c), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(c). That provision permits a Court of Criminal Appeals (CCA) to "affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Focusing on the phrase "the entire record," the CAAF conducted a survey of its precedent to determine when outside-the-record matters had been permitted in the past. This led the CAAF, in *Jessie*, to identify three categories of cases—those in which CCAs had been: (1) prohibited from considering outside-the-record

10

matters; (2) permitted to consider matters raised by materials in the record, but not fully resolvable by those materials; and (3) permitted to consider matters arising entirely outside the record. Ultimately, the CAAF concluded it saw no good reason to disagree with the first category of cases, exemplified by the case of *United States v. Fagnan*, 30 C.M.R. 192 (C.M.A. 1961). The CAAF found that *Fagnan* "established a clear rule that the CCAs may not consider anything outside of the 'entire record' *when reviewing a sentence* under Article 66(c), UCMJ." *Jessie*, 79 M.J. at 441 (emphasis added) (citation omitted).

With respect to the second category of cases, however, the CAAF explicitly noted that its decision in *Jessie* "does not overrule, call into question, or otherwise affect" decisions falling within that category "because they have not been as limited in their subject matter as decisions in the third category of cases, which have concerned only Eighth Amendment[*] and Article 55, UCMJ, [10 U.S.C. § 855,] post-trial confinement claims." *Jessie*, 79 M.J. at 445. The CAAF went on to limit the third category of cases to post-trial punishment issues raised under those two theories. *Id.* at 444–45.

Significantly, each case discussed by CAAF with respect to the first and third categories dealt with issues occurring after the court-martial had adjourned and which pertained to the appellants' sentences. For example, *Fagnan* involved a post-trial psychological evaluation and a letter written by a confinement official regarding the appellant's conduct during post-trial confinement. 30 C.M.R. at 193. For the second category of cases, however, the CAAF cited to *United States v. Parker*, 36 M.J. 269 (C.M.A. 1993), for examples of when post-trial factfinding hearings had been ordered to gather extra-record facts for purposes of an appeal. Among the examples in *Parker* are hearings pertaining to peremptory challenges, ex parte communications by a military judge, and testimony which was never received in evidence. *Parker*, 36 M.J. at 272. Another example dealt with a pretrial disclosure of a privileged communication—a matter which was not raised at trial and which was apparently explored for the first time on appeal. *United States v. Payton*, 23 M.J. 379 (C.M.A. 1987). It is this category which the CAAF held *Jessie* had no impact on.

I conclude *Jessie*'s restrictions—pertinent to the case's first and third categories—primarily relate to matters relevant to an appellant's sentence which develop post-trial. The CAAF left open the opportunity for extra-record matters in the second category of cases so long as a matter is "raised by materials in the record." *Jessie*, 79 at 445. I submit that a matter is "raised by materials in the record" whenever it pertains to matters either explicitly or implicitly related to the court-martial, to include—but not limited to—the conduct of the

---

[*] U.S. CONST. amend. VIII.

court-martial itself, regardless of whether the issue raised on appeal was actually litigated at trial. This conclusion is bolstered by the CAAF's recent opinion, *United States v. King*, in which the CAAF endorsed the submission of matters related to the excusal of a court member, even though the excusal was only mentioned in passing during the trial. ___ M.J. ___, No. 22-0008, slip op. at 9–10 (C.A.A.F. 23 Feb. 2023). Holding otherwise would deprive the CCAs of the ability to inquire into matters occurring during trial but discovered by an appellant only after the trial's conclusion—such as allegations of judicial misconduct, unlawful command influence, and attempts to influence members—despite the fact such matters might squarely impact the question of whether the findings should be approved. Indeed, the fact the CAAF excepts claims of ineffective assistance from its outside-the-record prohibition is a strong indication that matters which implicate an appellant's rights or which otherwise relate to the fairness of the court-martial itself are necessarily "raised by materials in the record," even if the issues were never specifically mentioned in the record itself or litigated below. Because the issue raised by Appellant relates to the conduct of his court-martial, I would conclude this case falls within *Jessie*'s second category and is unimpacted by the restrictions established elsewhere in that opinion. As such, the matters submitted by Appellant may be considered by this court regardless of the fact they are not included in the record.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court