UNITED STATES, Appellant

v.

Michael T. NERAD, Senior Airman
U.S. Air Force, Appellee

No. 09-5006

Crim. App. No. 36994

United States Court of Appeals for the Armed Forces

Argued December 8, 2009

Decided July 27, 2010

RYAN, J., delivered the opinion of the Court, in which EFFRON, C.J., and ERDMANN, J., joined. BAKER, J., filed a separate opinion concurring in the result. STUCKY, J., filed a separate dissenting opinion.

Counsel

For Appellant: Lieutenant Colonel Jeremy S. Weber (argued); Colonel Douglas P. Cordova and Gerald R. Bruce, Esq. (on brief).

For Appellee: Dwight H. Sullivan, Esq. (argued); Captain Jennifer J. Raab and Captain Tiffany M. Wagner (on brief); Major Shannon A. Bennett.

Amicus Curiae for Appellant: Colonel Norman F. J. Allen, Major Sara M. Root, Captain Sasha N. Rutizer, and Captain Sarah J. Rykowski (on brief) -- for the Army Appellate Government Division.

Amicus Curiae for Appellee: Michelle M. Lindo McCluer, Esq., Jonathan E. Tracy, Esq., Eugene R. Fidell, Esq., and Stephen A. Saltzburg, Esq. (on brief) -- for the National Institute of Military Justice.

Military Judge: Gary M. Jackson

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge RYAN delivered the opinion of the Court.

In accordance with his pleas, a general court-martial, composed of a military judge sitting alone, found Appellee guilty of failure to obey a lawful order, wrongful disposition of military property, larceny, sodomy, possession of child pornography, and adultery, violations of Articles 92, 108, 121, 125, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 908, 921, 925, 934 (2006).  The military judge sentenced Appellee to a dishonorable discharge, confinement for twelve months, forfeiture of all pay and allowances, a reprimand, and a reduction to the grade of E-1.  The convening authority approved the findings and sentence.

The United States Air Force Court of Criminal Appeals (CCA) reviewed the case pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2006).  United States v. Nerad, 67 M.J. 748, 749 (A.F. Ct. Crim. App. 2009).  Despite concluding that there was no legal or factual error in the case, it nonetheless set aside and dismissed the finding of guilty to the child pornography offense based on the "unique circumstances" of the case.  Id. at 752-53; see infra Part I.  The court approved the remaining findings and approved the sentence as adjudged.  67 M.J. at 753.

The Judge Advocate General of the Air Force certified the case to this Court for review of the following issue:

United States v. Nerad, No. 09-5006/AF

> WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED
> IN NULLIFYING APPELLEE'S FACTUALLY AND LEGALLY
> SUFFICIENT CONVICTION FOR POSSESSION OF CHILD
> PORNOGRAPHY.

We hold that while CCAs have broad authority under Article 66(c), UCMJ, to disapprove a finding, that authority is not unfettered. It must be exercised in the context of legal -- not equitable -- standards, subject to appellate review. United States v. Quiroz, 55 M.J. 334, 339 (C.A.A.F. 2001). Relatedly, while Article 66(c), UCMJ, affords a CCA broad powers, when faced with a constitutional statute a CCA "cannot, for example, override Congress' policy decision, articulated in a statute, as to what behavior should be prohibited." United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 497 (2001).

Here, it is unclear from the CCA's opinion whether it exceeded its authority by disapproving a finding with reference to something other than a legal standard, potentially infringing on the sole prerogative of the convening authority under Article 60, UCMJ, 10 U.S.C. § 860 (2006), to disapprove a finding based on purely equitable grounds. It is also unclear from the CCA's opinion whether the CCA abused its discretion by refusing to affirm a finding because it thought it "unreasonable" to criminalize such conduct "under the circumstances," even though the circumstances fell squarely within the definition of child pornography crafted by Congress and referenced by the CCA. 18

3

U.S.C. § 2256(1) (2006) (defining "minor" as "any person under the age of eighteen years"), cited in Nerad, 67 M.J. at 751. Accordingly, the case is remanded for further proceedings before the lower court.

I.

A.

The facts relevant to the charge and specification dismissed by the CCA involve a consensual sexual relationship between Appellee, who was married, and GL, a seventeen-year-old female. They each took sexually explicit pictures of one another, including pictures in which they were engaged in sexual conduct with each other. Based on his possession of these sexually explicit pictures of GL, the Government charged Appellee with possession of child pornography in violation of Article 134, UCMJ.

Appellee not only did not contest the child pornography charge at trial, but prior to entering his pleas he signed a "Notification of Sex Offender Registration Requirement," which informed him that he might be required to register as a sex offender upon conviction of the charged offense.

In his clemency request to the convening authority, Appellee asked that the convening authority set aside the child pornography conviction. See generally Article 60(c)(1), UCMJ (providing that the convening authority may exercise "sole

4

discretion" as a matter of "command prerogative" in deciding whether to set aside or modify the findings or sentence); Rule for Courts-Martial (R.C.M.) 1107(c) Discussion (noting that the convening authority may set aside a finding "for any reason or no reason"). While acknowledging that he had committed "a crime," that the circumstances did not provide "a defense," and that he was "in fact, guilty of this offense," Appellee requested that the convening authority take into account the particular circumstances of his relationship with GL and "determine [that] a federal conviction for this offense is not appropriate in my case." The convening authority declined to grant this clemency request.

B.

Appellee did not challenge his convictions in his submission of issues to the CCA under Article 66(c), UCMJ. Rather, he requested sentence relief through an Eighth Amendment challenge to the conditions of his post-trial confinement, a request that the lower court rejected. Nerad, 67 M.J. at 749-50.

On an issue raised sua sponte, however, the CCA determined that it had the power to set aside the child pornography finding even though it could "find no legal error and the appellant never raised an issue at trial, pleading guilty to that offense." Id. at 751. As justification for this action the CCA

noted that Appellee "was in the unique position of having a relationship with someone he could legally see naked and, but for his existing marriage, legally have sex with, but could not legally possess nude pictures . . . that she took [of herself] and sent to him."  Id. at 751.  The CCA concluded that "possession of the photos under these circumstances is not the sort of conduct which warrants criminal prosecution for possessing child pornography and that this conviction unreasonably exaggerates the criminality of his conduct."  Id.  The CCA took particular note of the fact that a conviction for child pornography would require Appellee to register as a sex offender and endure "the significant consequences of such registration."  Id. at 752.  Based upon these considerations, the CCA dismissed the finding of guilty to the child pornography offense, affirmed the remaining findings, and approved the sentence as adjudged.  Id. at 752-53.

## II.

Article 66(c), UCMJ, states, in relevant part, that a CCA "may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."  Broken into its constituent parts, this statutory language provides that a CCA may affirm only such findings and sentence that it:  (1) finds correct in law; (2)

6

finds correct in fact;[1] and (3) determines, on the basis of the entire record, should be approved. United States v. Tardif, 57 M.J. 219, 224 (C.A.A.F. 2002).[2] At issue in this case is the scope and meaning of the "should be approved" language. The scope and meaning of Article 66(c), UCMJ, is a matter of statutory interpretation, a question of law reviewed de novo. United States v. Lopez de Victoria, 66 M.J. 67, 73 (C.A.A.F. 2008).

The parties agree, consistent with our precedent, that a CCA may approve only that part of a sentence that it finds

---

[1] The phrase "correct in law and fact," Article 66(c), UCMJ, is used throughout our cases as synonymous with legal and factual sufficiency. See, e.g., United States v. Beatty, 64 M.J. 456, 458 (C.A.A.F. 2007) (equating the two while discussing the extent of a CCA's power under Article 66(c), UCMJ, concluding that "[a] Court of Criminal Appeals may not affirm the findings and sentence of a court-martial unless it finds them to be both factually and legally sufficient. Article 66(c), UCMJ"); see also United States v. Reed, 54 M.J. 37, 41 (C.A.A.F. 2000) ("The test for legal sufficiency requires courts to review the evidence in the light most favorable to the Government. If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the evidence is legally sufficient. . . . The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the court is convinced of the accused's guilt beyond a reasonable doubt.") (citations and quotation marks omitted). The latter determination is unique to the military justice system, as it requires a CCA to review the record de novo and determine whether the accused is guilty beyond a reasonable doubt.

[2] "In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses." Article 66(c), UCMJ.

"should be approved."[3]  See, e.g., United States v. Christopher,

13 C.M.A. 231, 235-36, 32 C.M.R. 231, 235-36 (1962).  In

reviewing the exercise of this power, we ask if the CCA abused

its discretion or acted inappropriately -- i.e., arbitrarily,

capriciously, or unreasonably -- as a matter of law.  See, e.g.,

United States v. Jones, 39 M.J. 315, 317 (C.M.A. 1994) ("We will

only disturb the [CCA's] reassessment [of a sentence] in order

to prevent obvious miscarriages of justice or abuses of

discretion.") (citations and quotation marks omitted);

Christopher, 13 C.M.A. at 236, 32 C.M.R. at 236.

　　　The parties disagree, however, on the scope of a CCA's

power as to findings.  Appellee argues that "should be approved"

---

[3] We note that Jackson v. Taylor, 353 U.S. 569 (1957), does not
control the question now before us because the Supreme Court had
no occasion to address the "should be approved" language of
Article 66(c), UCMJ, in the context of a sentence that was
correct in law and fact.  Jackson itself involved a situation
where the sentence imposed by the court-martial was no longer
"correct," or even lawful, because the original sentence
exceeded the maximum punishment permissible for the finding that
remained.  Id. at 570, 573-74.  In that context the Supreme
Court affirmed the power of a board of review -- the precursor
to today's CCAs -- to modify a sentence "in the manner it finds
appropriate."  Id. at 579.  Jackson did not, however, limit
boards of review to acting in instances where a sentence was not
"correct."  Instead, it reiterated a broader proposition,
consistent with the plain meaning of the statute:  CCAs have the
power to affirm only so much of a sentence as they find
"appropriate."  Id.  In any event, the dissent's interpretation
of Jackson, United States v. Nerad, __ M.J. __ (8-10) (C.A.A.F.
2010) (Stucky, J., dissenting), is squarely at odds with this
Court's interpretation.  See United States v. Sills, 56 M.J.
239, 240 (C.A.A.F. 2002); United States v. Miller, 10 C.M.A.
296, 299, 27 C.M.R. 370, 373 (1959).

8

means that the CCA has unfettered discretion to disapprove, for any reason or no reason at all, a finding that is correct in law and fact and that the exercise of that discretion is not subject to appellate review.  The Government takes the opposite position, arguing that if a finding is correct in law and fact the CCA must approve it.  Consistent with our case law, we adopt neither position.  See Quiroz, 55 M.J. at 338-39 (permitting the CCA to disapprove legally and factually sufficient findings but remanding to ensure the lower court applied a legal as opposed to an equitable standard); Tardif, 57 M.J. at 224 (recognizing that a CCA has discretion under Article 66(c), UCMJ, to fashion an appropriate remedy for excessive post-trial delay with respect to findings or sentences that are legally and factually correct).

### A.

We begin from the settled premise that in exercising its statutory mandate a CCA has discretion to approve only a sentence, or such part of a sentence, that it "determines, on the basis of the entire record, should be approved," Article 66(c), UCMJ, even if the sentence is "correct."  See United States v. Atkins, 8 C.M.A. 77, 79, 23 C.M.R. 301, 303 (1957) ("In short, the criterion for the exercise of the board of review's power over the sentence is not legality alone, but legality limited by appropriateness.").  Even that broad

discretion is not unfettered, however.  See United States v. Lacy, 50 M.J. 286, 287-89 (C.A.A.F. 1999) (reviewing a CCA's sentence appropriateness determination for abuse of discretion).

The Government argues that this has no bearing on the certified question because "should be approved" has meaning only with respect to a CCA's power to disapprove or modify a sentence.  We disagree that "should be approved" has no meaning with respect to a CCA's action on findings.  "[F]indings" and "sentence" are grammatically coupled in Article 66(c), UCMJ, joined equally with "and determines . . . should be approved." The phrase "should be approved" must have meaning with respect to findings as well as sentence and modify both.  When a modifier is set off from a series of antecedents by a comma, the modifier should be read to apply to each of those antecedents. Bingham, Ltd. v. United States, 724 F.2d 921, 925-26 n.3 (11th Cir. 1984); see also, e.g., Elliot Coal Mining Co. v. Director, Office of Workers' Comp. Programs, 17 F.3d 616, 630 (3d Cir. 1994) ("[U]se of a comma to set off a modifying phrase from other clauses indicates that the qualifying language is to be applied to all of the previous phrases and not merely the immediately preceding phrase.").  Therefore, it is impossible -- based on the statute -- to acknowledge a CCA's power to modify or disapprove a "correct" sentence while disagreeing it has any such power with respect to a "correct" finding.  Nor is such a

view consistent with our limited precedent on this question.

See, e.g., Quiroz, 55 M.J. at 338-39; United States v. Drexler,

9 C.M.A. 405, 408, 26 C.M.R. 185, 188 (1958).

B.

Despite the statutory text and our case law, the Government

and dissent, Nerad, __ M.J. at __ (12-15) (Stucky, J.,

dissenting), rely on language in United States v. Waymire, 9

C.M.A. 252, 26 C.M.R. 32 (1958), for the proposition that

whatever the CCA's power with respect to sentence, the CCA has

no discretion when it comes to approving legally and factually

sufficient findings.  The Waymire Court did assert that:

> Unlike a convening authority, who may disapprove
> findings of guilt for any reason, or for no reason at
> all, a board of review may only disapprove such
> findings as it finds incorrect in law and fact.  It
> was never intended that a board of review be given the
> power to disapprove findings in its "discretion."

Id. at 255, 26 C.M.R. at 35 (citation omitted).  But in that

case the board of review sidestepped the legal issues entirely,

acting instead in a manner "not unlike an arbitration or

mediation board designed to effect an adequate and satisfactory

compromise between negotiating parties."  Id. at 254, 26 C.M.R.

at 34.  On appeal, the Judge Advocate General of the Army asked

this Court to consider "whether a board of review had the power

to set aside findings of guilt without first deciding whether

the court-martial had jurisdiction, or whether such findings

11

were incorrect in law and fact." Id. at 253, 26 C.M.R. at 33.
This Court held that the board did not have such a power,
stating that "in setting aside the forgery conviction solely on
the basis of 'substantial justice,' [the board of review]
exceeded the scope of its authorized statutory functions." Id.
at 255, 26 C.M.R. at 35. We did not present a holding on what
the words "should be approved" entailed in the context of a
board's action on legally and factually sufficient findings --
nor could we, since the board had not even attempted to
undertake such sufficiency determinations. Our use of the
phrase "substantial justice" served to reject the board's
assumption that its function was to forge an equitable
compromise between the parties. Waymire thus serves as
precedent for the unremarkable proposition that CCAs may not
disapprove findings on equitable grounds or disregard their
statutory duty to determine legal and factual sufficiency.[4]

Further, the language the Government and the dissent draw
from Waymire has not functioned in practice as precedent on the
question whether the CCAs may disapprove findings that are
correct in law and fact.[5] Indeed, one month after Waymire, this

---

[4] This holding supports a conclusion we reach with respect to the
certified question: a CCA may not disapprove a finding based
solely on equitable grounds.
[5] It is instructive that in two of this Court's relatively recent
cases addressing the valid scope of CCA action under Article
66(c), UCMJ -- Tardif, 57 M.J. at 230 (Sullivan, S.J.,

12

Court decided <u>Drexler</u> with language suggesting that intermediate courts had such a power:

> Apart from the special rules of law applicable in this area, there is the general principle that an appellate tribunal can dismiss even a valid finding as part of its action in correcting errors at the trial and to insure justice to the accused. This general power is possessed by the boards of review.

9 C.M.A. at 408, 26 C.M.R. at 188 (citations omitted);[6] <u>see also</u> <u>Quiroz</u>, 55 M.J. at 338 (noting that we have described Congress's grant of authority to the CCAs under Article 66(c), UCMJ, as an "'awesome, plenary, <u>de novo</u> power,'" but denying that this power is equitable in nature (quoting <u>United States v. Cole</u>, 31 M.J. 270, 272 (C.M.A. 1990))); <u>United States v. Claxton</u>, 32 M.J. 159, 162 (C.M.A. 1991) (holding that a CCA may disregard doctrines like waiver "in the interest of justice" to reach legal errors that would otherwise be uncognizable).

---

dissenting), and <u>Quiroz</u>, 55 M.J. at 345 (Sullivan, J., dissenting) -- <u>Waymire</u> was cited <u>in dissent</u> for the very proposition relied upon by the Government and the dissent in this case. <u>See</u> <u>Nerad</u>, __ M.J. at __ (12-15) (Stucky, J., dissenting). Perhaps recognizing this, the Government did not even raise <u>Waymire</u> until its reply brief to this Court.

[6] <u>Drexler</u> involved the disapproval of charges that were multiplicious. <u>Id.</u> at 407, 26 C.M.R. at 187. Multiplicious charges may be correct in law and fact (under the applicable standards of review for legal and factual sufficiency) but may nonetheless be disapproved by the CCA (using a legal standard). <u>See</u> <u>Quiroz</u>, 55 M.J. at 338-39. <u>Drexler</u> is thus consistent with our view that a CCA may only set aside a legally and factually sufficient finding on the basis of a legal -- as opposed to equitable -- ground.

Today's decision does not overrule Waymire: Waymire's holding on the certified issue in that case -- that a CCA may not decide a case on equitable grounds and avoid its duty to determine whether a finding is correct in law and fact, 9 C.M.A. at 254-55, 26 C.M.R. at 34-35 -- remains undisturbed. Waymire does not answer the certified issue in this case. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379 (1994) ("It is to the holdings of our cases, rather than their dicta, that we must attend . . . ."). And dictum otherwise contained in the case is both contrary to the statutory text and has been eroded by subsequent decisions.

C.

While we acknowledge that a CCA's power is not as narrow as the Government suggests, nor as broad as Appellee desires, this does not answer the separate question of its scope with respect to a finding that is correct in law and fact.

At first glance, the language "it finds . . . should be approved" in Article 66(c), UCMJ, might appear to empower a CCA to modify both findings and sentence for any reason or no reason at all, which is Appellee's position. Admittedly, this Court has used broad language with respect to the CCAs' discretion that could be read to support this interpretation. See, e.g., Tardif, 57 M.J. at 223 (recognizing the "broad power of the Courts of Criminal Appeals to protect an accused"); Claxton, 32

14

M.J. at 162 (indicating that Article 66(c), UCMJ, confers to CCAs "carte blanche to do justice"); see also United States v. Lanford, 6 C.M.A. 371, 379, 20 C.M.R. 87, 95 (1955) (stating that the distinction in labeling CCA action as clemency rather than judicial action "matters little, so long as it is clearly understood . . . [that the Boards of Review maintain] the power to treat an accused with less rigor than their authority permits") (citation and quotation marks omitted).  For "[i]n enacting the UCMJ in 1950, Congress saw fit to give the Boards of Review . . . very broad powers with respect to the approved findings and sentences of courts-martial."  Beatty, 64 M.J. at 458.  We have repeatedly -- "[i]n words that have often been cited" -- characterized a CCA's Article 66(c), UCMJ, authority as an "awesome, plenary de novo power of review [that] grants unto the Court . . . authority to, indeed, 'substitute its judgment' for that of the military judge. . . . [and] for that of the court members."[7]  Beatty, 64 M.J. at 458 (quoting Cole, 31 M.J. at 272) (alterations in original).

But the language in these cases does not exist in a vacuum. Notably, Congress used different language in granting review authority to a convening authority under Article 60, UCMJ, and

---

[7] And, of course, the requirement that the CCA review the record to ensure that the findings are factually sufficient, that it is convinced beyond a reasonable doubt that the facts support a finding of guilt, permits it to do just that.  See United States v. Washington, 57 M.J. 394, 399 (C.A.A.F. 2002).

CCAs under Article 66, UCMJ.  This different language -- along with the factual settings of cases acknowledging a CCA's discretion to modify a sentence or finding under Article 66(c), UCMJ, and well-established boundaries on a court's discretion related to constitutional statutes -- compels the conclusion that there are some limitations on a CCA's power to disapprove a "correct" finding.

The cases interpreting Article 66(c), UCMJ, have reflected this Court's attention to the specialized nature of the military justice system, particularly with respect to the unique functions and responsibilities of convening authorities and CCAs.  Congress's statutory grant of authority to the CCAs with respect to findings and sentence is more limited than the authority granted a convening authority.  Congress provided the convening authority with clear unfettered discretion -- as "a matter of command prerogative" -- to modify findings and sentence under Article 60(c), UCMJ:

> (1)  The authority under this section to modify the findings and sentence of a court-martial is a matter of command prerogative involving the sole discretion of the convening authority. . . .
>
> (2)  . . . The convening authority . . . in his sole discretion, may approve, disapprove, commute, or suspend the sentence in whole or in part.
>
> (3)  Action on the findings of a court-martial by the convening authority . . . is not required.  However, such person, in his sole discretion, may --

United States v. Nerad, No. 09-5006/AF

> (A)  dismiss any charge or specification by setting aside a finding of guilty thereto; or
>
> (B)  change a finding of guilty to a charge or specification to a finding of guilty to an offense that is a lesser included offense of the offense stated in the charge or specification.

Accord United States v. Finster, 51 M.J. 185, 186 (C.A.A.F. 1999) (noting that convening authorities enjoy "unfettered discretion to modify the findings and sentence for any reason -- without having to state a reason -- so long as there is no increase in severity"); R.C.M. 1107(c) Discussion (noting a convening authority may set aside a finding "for any reason or no reason").

While the CCA clearly has the authority to disapprove part or all of the sentence and findings, nothing suggests that Congress intended to provide the CCAs with unfettered discretion to do so for any reason, for no reason, or on equitable grounds, which is a function of command prerogative. See United States v. Prince, 16 C.M.A. 314, 315-16, 36 C.M.R. 470, 471-72 (1966) (citing legislative history distinguishing the convening authority's power of unfettered discretion over sentences from the more limited power of review of both intermediate appellate courts and this Court). The language of Article 60(c), UCMJ, gives a convening authority unfettered discretion; the language of Article 66(c), UCMJ, is not as bold. We assume Congress used different language for a reason. E.g., 2A Norman J. Singer & J.

17

D. Shambie Singer, <u>Sutherland Statutes and Statutory Construction</u> § 46:6, at 252 (7th ed. 2007).  The CCAs' power, therefore, must be more limited.

Nonetheless, the words "should be approved" do have some meaning, and we reject the proposition that the "should be approved" clause of Article 66(c), UCMJ, means <u>only</u> that the lower court can adjust findings and sentences that are incorrect in law or fact, at least as the standards for legal and factual sufficiency are ordinarily understood, <u>see</u> <u>supra</u> note 1.  <u>But see</u> <u>Nerad</u>, __ M.J. at __ (4-5) (Stucky, J., dissenting).  That approach both fails to afford independent meaning to "should be approved" and renders it surplusage, as a CCA clearly may not approve a legally or factually insufficient finding or an illegal sentence.[8]  See <u>New Process Steel, L.P. v. NLRB</u>, No. 08-1457, 2010 U.S. LEXIS 4973, at *11, 2010 WL 2400089, at *4 (U.S. June 17, 2010) (citing <u>Duncan v. Walker</u>, 533 U.S. 167, 174

---

[8] Moreover, if "should be approved" modifies both findings and sentences, that approach cannot easily be reconciled with precedent acknowledging that a CCA may disapprove "correct" findings and sentences because they are nonetheless "inappropriate," or "unreasonable" as a matter of law.  <u>See</u>, <u>e.g.</u>, <u>Quiroz</u>, 55 M.J. at 339; <u>Drexler</u>, 9 C.M.A. at 408, 26 C.M.R. at 188.  <u>Jackson</u> itself noted that Congress contemplated CCAs having the power to "'set aside, on the basis of the record, any part of a sentence, either because it is illegal <u>or</u> because it is inappropriate.'"  353 U.S. at 577 n.8 (quoting S. Rep. No. 81-486, at 28 (1949), <u>reprinted</u> <u>in</u> 1950 U.S.C.C.A.N. 2222, 2254) (emphasis added).

(2001) (declining to adopt a "construction of the statute,

[that] would render [a term] insignificant")).[9]

Our sentencing decisions on this point underscore that the

statutory phrase "should be approved" does not involve a grant

of unfettered discretion but instead sets forth a legal standard

subject to appellate review.  See, e.g., United States v.

Hutchison, 57 M.J. 231, 234 (C.A.A.F. 2002) (remanding a lower

court decision for de novo review in view of the possibility

that the lower court, in holding a sentence to be inappropriate,

exceeded its powers); see also Lacy, 50 M.J. at 288 (holding

Article 66(c), UCMJ, bars the lower courts acting on issues of

sentence appropriateness from committing "obvious miscarriages

of justice or abuses of discretion" and referencing factors that

a CCA might look to in determining whether sentence reassessment

was warranted); Christopher, 13 C.M.A. at 236, 32 C.M.R. at 236

(noting Article 66(c), UCMJ, does not authorize the lower

courts, while reviewing a sentence, to take an action that is

"arbitrary, capricious").  Article 66(c), UCMJ, empowers the

CCAs to "do justice," with reference to some legal standard, but

does not grant the CCAs the ability to "grant mercy."  United

---

[9] Contrary to the dissent's assertion that our interpretation of
Article 66(c), UCMJ, "discover[s] a hitherto unknown power,"
Nerad, __ M.J. at __ (1) (Stucky, J., dissenting), the present
opinion reflects the established analysis of the statute offered
by the Court in our prior decisions.  See supra 7-10; Tardif, 57
M.J. at 224; Quiroz, 55 M.J. at 338; United States v. Wheelus,
49 M.J. 283, 288 (C.A.A.F. 1998); Claxton, 32 M.J. at 162).

States v. Boone, 49 M.J. 187, 192 (C.A.A.F. 1998) (citation and quotation marks omitted).  Granting mercy for any reason or no reason is within the purview of the convening authority.  Id. Contra Lanford, 6 C.M.A. at 378-79, 20 C.M.R. at 94-95 (suggesting that intermediate appellate courts may grant clemency).

Moreover, although we have held that Article 66(c), UCMJ, permits a CCA to examine the record in a particular case and dismiss a finding because an accused's criminality was unreasonably exaggerated by the same acts beings charged multiple ways, Quiroz, 55 M.J. at 338-39, we have never suggested that Article 66(c), UCMJ, permits a CCA to disapprove a legally and factually sufficient finding because it believes that the conduct -- while falling squarely within the ambit of behavior prohibited by a constitutional criminal statute -- should not be criminalized.[10]  Nor could we.  Oakland Cannabis

---

[10] This is distinguished, of course, from the well-established authority of the President within the military justice system to clarify or give meaning to the UCMJ through promulgation of the Discussion and Analysis sections of the Manual for Courts-Martial, United States.  See United States v. Contreras, __ M.J. __ (3 n.2) (C.A.A.F. 2010) ("The President's analysis of the punitive articles is persuasive, but not binding, authority. . . .  Moreover, where the President's narrowing construction is favorable to an accused and is not inconsistent with the language of a statute, we will not disturb the President's narrowing construction, which is an appropriate Executive branch limitation on the conduct subject to prosecution." (citing United States v. Miller, 67 M.J. 87, 89 (C.A.A.F. 2008); United States v. Guess, 48 M.J. 69, 71 (C.A.A.F. 1998))) (alterations

Buyers' Coop., 532 U.S. at 490-91, 498-99 (rejecting the suggestion that even a court acting in equity could effectively decriminalize actions clearly barred under the Controlled Substances Act by crafting a medical-necessity exception to the Act's prohibitions against marijuana).

D.

As demonstrated above, the broad language with which we have described the CCAs' powers has been cabined in practice. While we have held that the CCAs can assess the record and determine whether the findings and sentence "should be approved" in the event of error even if the error did not rise to the level of requiring disapproval of the finding or sentence as a matter of law, those decisions arose in the context of trial and post-trial errors in which doctrines applicable to issues of law -- such as waiver -- would have precluded CCA action in the absence of the "should be approved" language of Article 66(c), UCMJ.[11] See Quiroz, 55 M.J. at 338 (stating that the lower

---

and quotation marks omitted); see also United States v. Jones, 68 M.J. 465, 471-72 (C.A.A.F. 2010).

[11] It is not accurate to equate -- as the dissent implicitly does, Nerad, __ M.J. at __ (5, 14) (Stucky, J., dissenting) -- any and all error in the proceedings with the separate and distinct tests for whether the finding and sentence are "correct in law and fact." Article 66(c), UCMJ; see supra note 1. A disparate sentence or a multiplicious finding can be correct in law and fact but nonetheless "inappropriate" or "unreasonable." See, e.g., Quiroz, 55 M.J. at 339; United States v. Olinger, 12 M.J. 458, 460 (C.M.A. 1982); Drexler, 9 C.M.A. at 408-09, 26 C.M.R. at 188-89.

court, having identified an unreasonable multiplication of charges -- an abuse of prosecutorial discretion -- possessed the authority under Article 66(c), UCMJ, "to determine the circumstances, if any, under which it would apply waiver or forfeiture"); Wheelus, 49 M.J. at 288 (recognizing that, while clemency is the province of the convening authority, the intermediate courts have "broad power to moot claims of prejudice" under Article 66(c), UCMJ, related to error in the post-trial process); Claxton, 32 M.J. at 164 (approving a decision by the intermediate court to order a sentence rehearing in light of an evidentiary error during sentencing under circumstances in which waiver would have ordinarily precluded relief). We have expressly declined to agree that a CCA may disapprove a finding based on pure equity. Quiroz, 55 M.J. at 339.

To be clear, when a CCA acts to disapprove findings that are correct in law and fact, we accept the CCA's action unless in disapproving the findings the CCA clearly acted without regard to a legal standard or otherwise abused its discretion. A CCA abuses its discretion when it disapproves a finding based on purely equitable factors or because it simply disagrees that certain conduct -- clearly proscribed by an unambiguous statute -- should be criminal. Even though a CCA is not required to identify the basis for its action, failure to do so makes it

difficult to determine whether a CCA's exercise of its Article 66(c), UCMJ, power was made based on a correct view of the law. The better practice, if a CCA sets aside a finding or sentence that is correct in law and fact, is for it to explain why the finding is unreasonable, based on a legal standard.

III.

Although this Court is required by statute to review the present appeal under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2006) (review of cases certified by the Judge Advocate General), Appellee argues that even if we identify an erroneous application of the law by the lower court, no remedial action -- such as a remand to apply the correct principles of law -- can be ordered.

Our precedent is to the contrary. In United States v. Leak, 61 M.J. 234 (C.A.A.F. 2005), we observed that this Court, since the early days of the UCMJ, has reviewed lower court decisions under Article 67(a)(2), UCMJ, for compliance with the law, and we have not confined corrective action to those cases found by the lower court to be "incorrect in law." See id. at 239-42; see also Quiroz, 55 M.J. at 338-39 (rejecting a factor the CCA used in conducting the unreasonable multiplication of charges analysis and remanding for the CCA to apply the correct factor); United States v. Thompson, 2 C.M.A. 460, 464, 9 C.M.R. 90, 94 (1953) (reversing a CCA's factual sufficiency

determination because it misapprehended the legal elements of the offense, and remanding for the CCA to conduct a new factual sufficiency review using the appropriate elements). Rather, the power to review a case under Article 67(a)(2), UCMJ, includes the power to order remedial proceedings, such as a remand, to ensure that the lower court reviews the findings and sentence approved by the convening authority in a manner consistent with a "correct view of the law." See Leak, 61 M.J. at 242 (citation and quotation marks omitted).

Whether the CCA's review in this case was consistent with a "correct view of the law" is an open question. The CCA appeared to believe it had unfettered discretion to disapprove a finding. The court identified no error -- even error that would not preclude a determination that the finding was correct in law and fact -- or other legal rationale with respect to the charge, the specification, the finding, the trial, or the post-trial process that warranted exercise of its unique power under Article 66(c), UCMJ.[12] Nor did the CCA identify tangible factors, either by reference to other charges in the case or by reference to other

---

[12] Under the present circumstances, where the CCA did not purport to disapprove the finding on the basis of a legal error, this case simply does not implicate or address Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006) ("A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused."). Contra Nerad, __ M.J. at __ (1-2, 14, 17) (Stucky, J., dissenting).

cases, that led it to conclude that the finding "unreasonably exaggerate[d] the criminality of" the conduct, Nerad, 67 M.J. at 751-52, or any factor that caused the charge, albeit lawful, to constitute an abuse of prosecutorial discretion. Cf. United States v. Quiroz, 57 M.J. 583, 585-86 (N-M. Ct. Crim. App. 2002) (finding an unreasonable multiplication of charges based on clearly explained factors).

While none of these factors are either required or dispositive, the CCA's comment that it disapproved the finding because it was "not the sort of conduct which warrants criminal prosecution," Nerad, 67 M.J. at 751, gives us pause, particularly in light of its failure to discuss any of the non-exclusive bases that may have made its action appropriate.

It is possible that the CCA believed it could set aside a finding in a guilty plea case where the accused was fully apprised of the collateral consequences of his conviction on the ground that it believed that:  (a) Appellee should not have been prosecuted; or (b) the convening authority should have granted the clemency Appellee requested.  But both of those decisions are matters of command prerogative and, as such, are for the convening authority, not the CCA.  Article 60(c), UCMJ; United States v. Travis, 66 M.J. 301, 303 (C.A.A.F. 2008) ("Clemency is a highly discretionary command function of a convening authority.") (citation and quotation marks omitted).  Moreover,

given the reasoning underlying the CCA's decision here, the CCA may have disapproved the finding of guilty to the child pornography offense (which criminalizes the relevant conduct with persons under the age of eighteen without exception, see 18 U.S.C. § 2256(1)) based on its own judgment regarding the wisdom of applying the statute to cases where "the appellant was in the unique position of having a relationship with someone he could legally see naked and, but for his existing marriage, legally have sex with, but could not legally possess nude pictures of her that she took and sent to him." Nerad, 67 M.J. at 751. This it may not do. See Badaracco v. Comm'r, 464 U.S. 386, 397–98 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement.").

If the CCA in fact based its decision on the above rationale, labeling the finding "unreasonable" does not transform a quintessentially equitable determination into a legal one. In light of the foregoing, the case is remanded for a new Article 66(c), UCMJ, review consistent with this decision.

IV.

The decision of the United States Air Force Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the

United States Air Force Court of Criminal Appeals for a new review under Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2006).

United States v. Nerad, No. 09-5006/AF

BAKER, Judge (concurring in the result):

In my view, the majority seeks to decide too much and rebut too much at this stage in the proceedings. As a result, I write separately to concur in the result.

Courts of Criminal Appeals (CCAs) are courts of law. They can decide cases based on principles of law or issues of fact. Viewing the words of Article 66, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866 (2006), in the context of the UCMJ as a whole, and the role of CCAs within that UCMJ, it is clear that CCAs are not equitable courts, and they are not policy-making bodies. They are empowered to decide cases based on principles of law applied in the context of Article 66, UCMJ.

The problem here is that we do not know on what legal basis, if any, the lower court dismissed the charge in this case; the lower court's opinion does not elaborate. It appears that the lower court has acted with de facto clemency; however, having decided to make Appellant's appeal a test case, the CCA should have an opportunity to explain its reasoning. Therefore, I agree with the remand. With the benefit of additional input from the lower court regarding what legal principles it applied, if any, in reaching its conclusions, we will better understand where the case-specific and statutory fault lines lie between the various opinions. At that point, this Court will be able to more squarely address the Article 66, UCMJ, issues at hand.

United States v. Nerad, No. 09-5006/AF

STUCKY, Judge (dissenting):

> Equity is a Roguish thing:  for Law we have a measure,
> know what to trust to; Equity is according to the
> Conscience of him that is Chancellor, and as that is
> larger or narrower, so is Equity.  'Tis all one as if
> they should make the Standard for the measure we call
> a Foot, a Chancellor's Foot; what an uncertain Measure
> would be this.  One Chancellor has a long Foot,
> another a short Foot, a Third an indifferent Foot:
> 'Tis the same thing in the Chancellor's Conscience.

John Selden, Table-Talk:  Being the Discourses of John Selden, Esq. 43-44 (Israel Gollancz ed., The Temple Classics, 3d ed. 1906) (1689).

Sixty years after the enactment of the Uniform Code of Military Justice (UCMJ), the United States Air Force Court of Criminal Appeals and the majority discover a hitherto unknown power of the Courts of Criminal Appeals (CCAs) to disapprove findings that are correct in law and fact under the "should be approved" clause of Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2006).  To infuse the "should be approved" clause with this desired meaning, the majority embarks on a quixotic quest.  It reaches its destination by misreading Article 66(c), concocting a novel understanding of the term "correct in law," and despite protestations to the contrary, creating a standard so vague that it amounts to no standard at all, simply equity -- the measure of the Chancellor's foot.  Ultimately, the majority's approach eviscerates the requirement that "[a] finding or sentence of a court-martial may not be held incorrect on the ground of an

error of law unless the error materially prejudices the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006).

While I agree with the majority that we have jurisdiction over this case, I continue to believe that a CCA is not authorized to disapprove a finding or sentence that is correct in law and fact. The majority's reading of Article 66 is inconsistent with the language of the statute taken as a whole, the Supreme Court's opinion in Jackson v. Taylor, 353 U.S. 569 (1957), interpreting the statute, and this Court's precedents of more than fifty years.

The CCA's action in setting aside Appellee's conviction for possession of child pornography is beyond its statutory authority and therefore without effect. As the CCA found the conviction correct in law and fact, this Court should order the conviction reinstated.

I.

In exchange for the convening authority's agreement to withdraw two specifications and cap the period of confinement that could be approved, Appellee pled guilty to a number of offenses, including possession of child pornography under clauses 1 and 2 of Article 134, UCMJ, 10 U.S.C. § 934 (2006). The CCA pointed out that the charges grew out of a love affair that Appellee was having with a seventeen-year-old girl, who

2

sent him nude photos and a video of herself over the Internet.

United States v. Nerad, 67 M.J. 748, 751 (A.F. Ct. Crim. App.

2009).  Although not raised by Appellee, the CCA asked whether

it had authority to set aside a conviction that was correct in

law and fact "in the interest of justice."  Id. at 749.  As

Appellee could lawfully see his paramour naked and, but for his

existing marriage, have sex with her, the CCA concluded that:

> the [appellee's] possession of the photos under these
> circumstances is not the sort of conduct which
> warrants criminal prosecution . . . and that this
> conviction unreasonably exaggerates the criminality of
> his conduct.  The question is whether we can set aside
> the conviction on that basis alone, even though we
> find no legal error and the appellant never raised an
> issue at trial, pleading guilty to that offense.  The
> government . . . unconvincingly argues that neither
> the plain language of the statute, its legislative
> history, nor case precedent indicates the Court can
> set aside a finding of guilty that is found correct in
> law and fact.  We disagree on all points.

Id. (emphasis added).[1]

## II.

This Court holds that the CCAs have broad authority to

disapprove a finding that is correct in law and fact but that

---

[1] Appellee could have challenged the specification at trial and
asserted that, under the circumstances, he was not guilty.
Instead, he chose to plead guilty.  In that situation, the
appropriate inquiry for the CCA would have been whether there
was a substantial basis in law or fact for rejecting the plea.
United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F. 2008).
Apparently there was none.  Instead of affirming, however, the
CCA chose to set sail on these uncharted waters.  To permit an
accused to receive the benefit of a pretrial agreement and yet

authority is not unfettered.  United States v. Nerad, __ M.J.

__, __ (3) (C.A.A.F. 2010).  This Court will "accept the CCA's

action unless in disapproving the findings the CCA clearly acted

without regard to a legal standard or otherwise abused its

discretion."  Id. at __ (22).  It remands to the court below

apparently to identify an

> error -- even error that would not preclude a
> determination that the finding was correct in law and
> fact -- or other legal rationale with respect to the
> charge, the specification, the finding, the trial, or
> the post-trial process that warranted exercise of its
> unique power under Article 66(c), UCMJ.  Nor did the
> CCA identify tangible factors, either by reference to
> other charges in the case or by reference to other
> cases, that led it to conclude that the finding
> "unreasonably exaggerate[d] the criminality of" the
> conduct, Nerad, 67 M.J. at 751-52, or any factor that
> caused the charge, albeit lawful, to constitute an
> abuse of prosecutorial discretion.

Id. at __ (24-25) (brackets in original) (footnote omitted).

                              III.

     Although it is unclear to what extent it affects the

ultimate decision in this case, the majority redefines the term

correct in law to mean legally sufficient.  Nerad, __ M.J. at __

(7) n.1 (citing United States v. Beatty, 64 M.J. 456, 458

(C.A.A.F. 2007); United States v. Reed, 54 M.J. 37, 41 (C.A.A.F.

2000)).  This is a novel theory for which there is no support,

even in the cases the majority cites.

---

prevail on appeal when the conviction is correct in law and fact
is astonishing.

United States v. Nerad, No. 09-5006/AF

Legal sufficiency concerns the state of the evidence against the accused -- whether it is sufficient to justify the determination of the trier of fact that the accused is guilty beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Reed, 54 M.J. at 41.  The term "correct in law" is broader in scope and "pertains to errors of law." United States v. Tardif, 57 M.J. 219, 224 (C.A.A.F. 2002).  Legal insufficiency is an error of law and is thus subsumed in the term "correct in law."  In Beatty and Reed, this Court was dealing with the specific question of whether the evidence was legally sufficient, not the broader question of whether the conviction was correct in law.  Beatty, 64 M.J. at 457; Reed, 54 M.J. at 38.

IV.

The CCA's action, and the certified issue, require us to interpret Article 66, UCMJ.  Questions of statutory construction are questions of law that we review de novo.  United States v. Lopez de Victoria, 66 M.J. 67, 73 (C.A.A.F. 2008).

Our duty in interpreting a statute is to implement the will of Congress, "so far as the meaning of the words fairly permit[ ]."  Sec. & Exch. Comm'n v. Joiner, 320 U.S. 344, 351 (1943).  In doing so, where possible, we should "avoid rendering superfluous any parts thereof."  Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 112 (1991).

5

As in all statutory construction cases, we begin with the language of the statute. The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent.

Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002) (quotation marks and citations omitted). Whether the statutory language is ambiguous is determined "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997).

V.

The scope of the CCAs' authority is contained in Article 66(c), UCMJ, which provides that:

In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

To analyze the statute, the majority breaks it down into its constituent parts: The CCA may affirm only such findings and sentence as it (1) finds correct in law; (2) finds correct in fact; and (3) "determines, on the basis of the entire record, should be approved." Nerad, __ M.J. at __ (6-7). As the

6

majority notes, the three constituent parts of Article 66(c) "are grammatically coupled" such that the "should be approved" language must apply to both findings and sentence. Id. at __ (10). The question, therefore, is what does "should be approved" mean and how should it apply within the context of the whole statute?

The majority examines what it believes to be the correct application of Article 66(c)'s third constituent part to sentencing and applies the same logic to findings. It contends that the phrase "determines . . . should be approved" gives the CCAs discretion to alter a sentence that is correct in law and fact. Id. at __ (9, 18-19). By applying the same logic to findings, the majority determines that the CCAs also have discretion to disapprove a finding that is correct in law and fact. See id. at __ (10-13).

Just as I disagree with the majority's analysis of the CCAs' powers to reduce sentences, I oppose its conclusions as to the CCAs' powers to disapprove findings. I conclude that the "should be approved" language is not an independent grant of power, but merely a mechanism by which Congress granted authority to the CCAs to correct errors of fact or law, based on the entire record, without having to remand for a rehearing.

VI.

The CCA's power to review a sentence for appropriateness is a function of its duty under Article 66(c) to affirm only so much of the sentence as it finds correct in fact. See Jackson v. Taylor, 353 U.S. 569, 576-77 (1957). It does not derive from the "should be approved" language of the statute. But see United States v. Lacy, 50 M.J. 286, 287-88 (C.A.A.F. 1999).

A.

In Jackson, the Army Board of Review set aside the petitioner's conviction for murder, affirmed his conviction for attempted rape, and reduced the sentence from mandatory confinement for life to the maximum for attempted rape -- confinement for twenty years. 353 U.S. at 570. In a habeas petition, id. at 572, Jackson asserted that Article 66(c) was ambiguous and that he should have received the benefit of that ambiguity: The Board of Review should have ordered a sentence rehearing rather than merely reassessing the sentence. Id. at 576. The Supreme Court found "no authority in the Uniform Code for such a procedure."[2] Id. at 579. It concluded that

---

[2] As the Supreme Court noted in Jackson, Congress never intended a case to be remanded back to a court-martial for a sentence rehearing. See Article 66(d), UCMJ (permitting remand when the CCA "sets aside the findings and sentence" (emphasis added); but see United States v. Miller, 10 C.M.A. 296, 299, 27 C.M.R. 370, 373 (1959) (concluding that it is "entirely unreasonable" to construe the statutory language in Article 66(d) as authorizing a rehearing only if the findings and sentence were set aside;

8

> the words [of the statute] are clear. The board may "affirm . . . such part or amount of the sentence, as it finds correct . . . ." That is precisely what the review board did here. It affirmed such part, 20 years, of the sentence, life imprisonment, as it found correct in fact and law for the offense of attempted rape. Were the words themselves unclear, the teachings from the legislative history of the section would compel the same result.

Id. at 576 (emphases added).

B.

Because the Supreme Court found the language of Article 66(c) to be clear, there was and is no need to resort to the legislative history to interpret the statute. Nevertheless, while the Supreme Court decided Jackson based on the statute's clear language, it did not shun the legislative history but rather embraced it. It determined that the clear language of the statute was consistent with the legislative history. Id. at 576. It quoted the following portion of the legislative history as "augment[ing]" its conclusions:

> "The Board of Review shall affirm a finding of guilty of an offense or a lesser included offense . . . if it determines that the finding conforms to the weight of the evidence and that there has been no error of law which materially prejudices the substantial rights of the accused. . . . The Board may set aside, on the basis of the record, any part of a sentence, either because it is illegal or because it is inappropriate. It is contemplated that this power will be exercised

---

that it would read the term "and" to mean "or"; and that Jackson did not intend to limit the power of the appellate courts to order rehearing on sentence alone); accord United States v. Sills, 56 M.J. 239, 240 (C.A.A.F. 2002).

9

>     to establish uniformity of sentences throughout the
>     armed forces."

Id. at 577 n.8 (emphases added) (quoting S. Rep. No. 81-486, at 28 (1949)); see also H.R. Rep. No. 81-491, at 31-32 (1949) (containing same language). Thus, Jackson and the legislative history are congruent: A sentence that is illegal is incorrect in law and one that is inappropriate is incorrect in fact. If the sentence is illegal or inappropriate, the CCA should instead affirm the sentence that should be approved -- a sentence that is correct in law and fact.

After the Board of Review set aside Jackson's murder conviction, his life sentence was incorrect in law -- it exceeded the maximum punishment permitted for attempted rape, which was twenty years. After considering the entire record, the Board of Review determined, as a matter of fact, that confinement for twenty years was the legal and appropriate sentence. To read Article 66(c) in the manner the majority does -- that the CCA's authority to determine sentence appropriateness stems from its duty to affirm only that part of the sentence that should be approved -- renders superfluous the requirement to find the sentence correct in fact, something we are discouraged from doing. See Solimino, 501 U.S. at 112.

VII.

Contrary to the position taken by the Government, I agree with the majority's grammatical assessment of Article 66(c): The words "should be approved" apply to a CCA's review of both findings and sentence. Nerad, __ M.J. at __ (10). But I understand the words to apply in a different manner, one that is consistent with the rest of the statute, including Article 66(d), UCMJ.

Article 66(d) provides that the CCA may order a rehearing if it sets aside both the findings and sentence. The "should be approved" language in Article 66(c) ties the power of the CCA to determine whether the findings and sentence are correct in law and fact with Article 66(d)'s limitations on ordering a rehearing. If only the sentence is incorrect in law or fact, the CCA may not order a rehearing. See Jackson, 353 U.S. at 579; Article 66(d), UCMJ. The CCA itself must determine what sentence "should be approved" -- one that is correct in law and fact. If the CCA sets aside a finding and sentence it may order a rehearing. Article 66(d), UCMJ. The CCA does not order a rehearing if it sets aside a finding of guilty but the evidence nevertheless established the accused's guilt of a lesser included offense. Instead, it affirms the finding and sentence that "should be approved" -- one that is correct in law and fact.

11

United States v. Nerad, No. 09-5006/AF

In the case now before us, the CCA held that, pursuant to its authority under Article 66(c) to affirm only those findings that should be approved, it had authority to overturn Appellee's guilty plea to the possession of child pornography "even in the absence of legal or factual error." Nerad, 67 M.J. at 751 (citing United States v. Tardif, 57 M.J. 219, 224 (C.A.A.F. 2002)). As the findings were concededly correct in law and fact, and there appears to be no basis in law or fact for setting aside his guilty plea (indeed, that issue was not even raised), the CCA was without authority to determine that the conviction for possession of child pornography should not be affirmed. This conclusion is consistent with Jackson and our longstanding precedent, United States v. Waymire, 9 C.M.A. 252, 26 C.M.R. 32 (1958).

VIII.

In Waymire, the Board of Review could not decide whether a court-martial had jurisdiction over the accused for one of his offenses. Id. at 254, 26 C.M.R. at 34. In lieu of reaching a decision on the jurisdiction question and without deciding whether the conviction was incorrect in law or fact, the Board of Review dismissed the offense in an act this Court characterized as akin to a compromise or arbitration. Id. at 253-54, 26 C.M.R. at 33-34. We held that the Board had exceeded

12

the scope of its statutory authority and reversed.  Id. at 255, 26 C.M.R. at 35.

The majority asserts that, in Waymire, we did not purport to interpret "what the words 'should be approved' entailed in the context of a board's action on legally and factually sufficient findings," and that "Waymire thus serves as precedent for the unremarkable proposition that CCAs may not disapprove findings on equitable grounds or disregard their statutory duty to determine legal and factual sufficiency."  Nerad, __ M.J. at __ (12).  I disagree.

In Waymire, we did interpret the meaning and scope of the authority of the Boards of Review under Article 66(c):

> The extent of a board of review's powers over findings have frequently been the subject of review by this Court.  In United States v Fleming, 3 C.M.A. 461, 13 C.M.R. 17, we said that a board of review "is under a duty to affirm so much of the findings of guilty as is not affected by error committed at the trial." Unlike a convening authority, who may disapprove findings of guilt for any reason, or for no reason at all, a board of review may only disapprove such findings as it finds incorrect in law and fact. United States v Massey, 5 C.M.A. 514, 18 C.M.R. 138. It was never intended that a board of review be given the power to disapprove findings in its "discretion." Cf. Article 64, of the Uniform Code, supra, 10 U.S.C. § 864.  Not only does Article 66, supra, require that a board affirm findings of guilt which it determines to be correct in law and fact, but also that such determination be made "on the basis of the entire record."  In United States v Whitman, 3 C.M.A. 179, 11 C.M.R. 179, we said that it was error for a board of review to rely upon matter lying outside the record of trial in setting aside an otherwise valid conviction. It was held in that case that such action went well

13

> beyond the statutory limits established by the Code. Cf. United States v Burns, 2 C.M.A. 400, 9 C.M.R. 30. In the instant case, there is no question but that the board of review, in setting aside the forgery conviction solely on the basis of "substantial justice," exceeded the scope of its authorized statutory functions. United States v Gordon, 2 C.M.A. 632, 10 C.M.R. 130.

9 C.M.A. at 255, 26 C.M.R. at 35 (emphasis added).

This Court did not just opine that the CCAs may only disapprove findings by reference to legal standards. Nerad, __ M.J. at __ (12). It provided the standard: The CCA must affirm the conviction unless prejudicial error was committed at trial. Waymire, 9 C.M.A. at 255, 26 C.M.R. at 35; see also Jackson, 353 U.S. at 577 n.8.

The majority further attempts to trivialize Waymire by asserting that one month after deciding that case we suggested that the CCAs had the power to disapprove a finding that is correct in law and fact. Nerad, __ M.J. at __ (12-13) (citing United States v. Drexler, 9 C.M.A. 405, 408, 26 C.M.R. 185, 188 (1958)). But that is not what Drexler says or means. As the majority quotes, "'an appellate tribunal can dismiss even a valid finding as part of its action in correcting errors at the trial.'" Id. at 13 (quoting Drexler, 9 C.M.A. at 408, 26 C.M.R. at 188) (emphasis added). Although Drexler's convictions were valid, in the sense that each was factually and legally sufficient on its own, the Board of Review did find an error of

14

law -- one of the charges was multiplicious with another. Drexler, 9 C.M.A. at 407, 26 C.M.R. at 187. Although at the time, reconsideration of the sentence was thought to "'cure any error resulting from any possible multiplication,'" we determined that dismissing the duplicating charge was within the sound discretion of the Board of Review. Id. at 408, 26 C.M.R. at 188 (quoting United States v. McCormick, 3 C.M.A. 361, 363, 12 C.M.R. 117, 119 (1953)). Rather than contradict Waymire as the majority contends, Drexler actually supports it. The Board of Review in Drexler corrected an error of law; it did not act as a matter of discretion.

Nor is Waymire a mere sport, a unique holding unbuttressed by other authority. In fact, there was substantial authority prior to Waymire for the same view of the power of the Boards of Review. See United States v. Fleming, 3 C.M.A. 461, 465, 13 C.M.R. 17, 21 (1953) (positive duty of Board of Review to affirm findings not affected by error at trial); United States v. Whitman, 3 C.M.A. 179, 180, 11 C.M.R. 179, 180 (1953) (Board of Review exceeds Article 66 power when it set aside findings because it would "create an injustice" in light of convening authority action in a related case).[3]

---

[3] Neither United States v. Claxton, 32 M.J. 159 (C.M.A. 1991), nor United States v. Tardif, 57 M.J. 219 (C.A.A.F. 2002), cited by the CCA as support for its action, can carry the weight placed on them. Claxton was a waiver case involving sentencing,

IX.

"[T]he doctrine of stare decisis is of fundamental importance to the rule of law."  Welch v. Texas Dep't of Highways and Pub. Transp., 483 U.S. 468, 494 (1987).  "Adherence to precedent promotes stability, predictability, and respect for judicial authority."  Hilton v. South Carolina Pub. Rys. Comm'n, 502 U.S. 197, 202 (1991).  Stare decisis applies with "special force in the area of statutory interpretation" because "the legislative power is implicated, and Congress remains free to alter" a court's interpretation.  Patterson v. McLean Credit Union, 491 U.S. 164, 172-73 (1989), quoted in Hilton, 502 U.S. at 202.

For those reasons, we should "not depart from the doctrine of stare decisis without some compelling justification."  Hilton, 502 U.S. at 202.  The majority has not provided such compelling justification to jettison Waymire and the cases that preceded it.

X.

The majority suggests that the CCA's authority to disapprove a finding that is correct in law and fact is "cabined" but provides scant support for the proposition.  Nerad, __ M.J. at __ (21).  It hints that the CCA's decision in

---

in which the statement about findings was an obiter dictum; Tardif dealt entirely with sentencing.

16

this case might have been acceptable if it had identified some error -- "even error that would not preclude a determination that the finding was correct in law and fact." Nerad, __ M.J. at __ (24). Such a conclusion guts Article 59(a), UCMJ: "A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused."

XI.

As the majority opinion announces new law, it is appropriate to consider how this grant of authority to the CCAs may operate.

The majority asserts that the CCAs have "broad," although not unfettered, authority to disapprove a finding that is correct in law. Nerad, __ M.J. at __ (3). It insists that "the statutory phrase 'should be approved' does not involve a grant of unfettered discretion but instead sets forth a legal standard subject to appellate review." Id. at __ (19) (citing United States v. Hutchison, 57 M.J. 231, 234 (C.A.A.F. 2002); Lacy, 50 M.J. at 288)).

The majority then asserts that for findings the CCAs' authority is "cabined." Id. at 21. If by "cabined," the majority is applying the "ordinary" meaning of the word -- confined within a narrow space or limits, see Webster's Third New International Dictionary, Unabridged 309 (2002) -- it seems

17

contrary to the characterization of a CCA's sentencing power employed in the cases it cites.  In Hutchison, 57 M.J. at 234, and Lacy, 50 M.J. at 287-88, this Court described a CCA's sentencing authority as a "highly discretionary power" that this court reviews for an abuse of discretion.  See also United States v. Claxton, 32 M.J. 159, 162 (C.M.A. 1991) ("A clearer carte blanche to do justice would be difficult to express.").

Whether the majority's legal standard is "cabined" or highly discretionary, in the end it amounts to no standard at all.  The majority states that it will accept a CCA's decision to disapprove findings that are correct in law and fact "unless in disapproving the findings the CCA clearly acted without regard to a legal standard or otherwise abused its discretion." Nerad, __ M.J. at __ (22).  It suggests that it might have upheld the CCA's judgment if it had (1) identified some rationale or error, even a harmless one, or (2) identified some "tangible factors" leading it to conclude that the finding of guilty "unreasonably exaggerated the criminality of" Appellee's conduct or "caused the charge, albeit lawful," to constitute "an abuse of prosecutorial discretion."  Id. at __ (24-25) (citations and brackets omitted).

In fact, what we have done here is to tacitly grant the CCAs a power that Congress withheld even from those creatures of pure equity, the boards for correction of military records:  the

power to revise the findings of courts-martial simply because a particular CCA panel does not like a particular result, or regards it as "unjust."  See 10 U.S.C. § 1552(f).  I can discern no principled standard by which the CCAs are to implement today's decision or we are to review these actions.  The CCAs, limited only by their own sense of judicial restraint -- the measure of their own feet -- are now free to act as councils of revision.  Thus, despite protestations to the contrary, the majority's decision grants equitable power to the CCAs.

The majority's decision is unsupported by Jackson v. Taylor and our case law, is not compelled by the language of Article 66, UCMJ, and is a result surely not intended by Congress.  As the CCA found Appellee's guilty plea to be correct in law and fact, I believe its decision to set aside the conviction for possession of child pornography exceeded its statutory authority and was without effect.  I would order the conviction reinstated.